UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : CASE NO. 1:21-cr-00575-JDB-2 |
| | : |
| LESPERANCE et. al., | : |
| | : |
| Defendants. | : |

### DEFENDANTS' MOTION TO DISMISS ON FIRST AMENDMENT GROUNDS

COMES NOW, Defendants, David John Lesperance ("Lesperance"), Casey Cusick ("Cusick"), and James Varnell Cusick Jr. ("Cusick Jr."), by and through undersigned counsel John Pierce, and hereby move this Motion to dismiss all counts of the indictment against them, on 1st Amendment grounds.

### INTRODUCTION

Given that the fundamental concept of government, Republican in form, entails a right on the part of its citizens to petition for a redress of grievances, the Defendants have a constitutional right to challenge the fairness of the presidential election. *See States Term Limits v. Thorton*, 514 U.S. 779, 843 (1995); *See also Hague v. Committee for Industrial Organization* which stated that: "Citizenship of the United States would be little better than a name if it did not carry with the right to discuss national legislation and the benefits, advantages, and opportunities to

1

accrue citizens therefrom." (*Hague v. Committee for Industrial Organization* 307 U.S. 496, 513 (1939) (opinion of Roberts, J., joined by Black, J.). As Chief Justice Marshall wrote in 1819: "[t]he government proceeds directly from the people; it is 'ordained and established,' in the name of the people." *See McCulloch v.Maryland,* 17 U.S. 316, 403-05, 4 L. Ed. 579 (1819) (Holding in both form and substance, it is "truly a government of the people").The People of the United States of America, have a right to take part in the implied protections of the Constitution, and along with that the freedom to "come to the seat of government to assert any claim he may have upon that government..." *See Crandall v. Nevada*, 6 Wallace, 36, 44 (1868).

The Capitol, on the other hand, is perhaps the place in America where the Government has the least authority to restrict citizen presence, petitioning, demonstrating, and activism. Bearing in mind, that the First Amendment of the Constitution specifically states that, "Congress shall make no law restricting free speech, peaceably assembling or interfering with the right to petition government for redress of grievances." *See USCS Const.,* Amend. 1. Congress is therefore susceptible to public oversight and correction, as stated in the plain text of the Constitution. However, the Defendants in this case are being charged of doing precisely that, exercising their First Amendment freedoms of expression and assembly, based on the aforementioned rights guaranteed by the Constitution.

The Defendants in this case are unjustly facing the following four misdemeanor counts as enumerated in the Criminal Docket and subsequent criminal complaint (ECF #1):

1. **18 USC § 1752(a)(1); Entering and Remaining in a Restricted Building;**
2. **18 USC § 1752(a)(2); Disorderly and Disruptive Conduct in a Restricted Building;**
3. **40 U.S.C. § 5104(e)(2)(D); Violent Entry and Disorderly Conduct in a Capitol Building**
4. **40 U.S.C. § 5104(e)(2)(G); Parading, Demonstrating, or Picketing in a Capitol Building**

## ARGUMENT

**1. Count 1: Knowingly Enter and Remaining in the Capitol**

In Count One, the Defendants are accused of "knowingly enter[ing] and remain[ing] in the United States Capitol, a restricted building, without lawful authority to do so, in violation of 18 U.S.C. § 1752(a)(1))." But there is no law of Congress which makes the Capitol a restricted building. Nor could Congress even lawfully deny access to the Capitol in such a way, as they have no constitutional authority to "make [any] law . . . abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." *See USCS Const.,* Amend. 1. Section 1752(a) does not proclaim that the Capitol is a "restricted" building. The text of the statute defines a restricted building as:

> [A] 'restricted building' includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the

> President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance. (ECF #1-1 at 7) (DOC #1-1 at 5)

However generally speaking, the Capitol is open to the public during normal business hours. Prior to January 6, the official website explicitly informed visitors that "The Capitol Visitor Center, the main entrance to the U.S. Capitol, is located beneath the East Front Plaza... the Capitol Visitor Center is open to visitors from 8:30 a.m. to 4:30 p.m. Monday through Saturday . . ." When the Defendants allegedly entered the Capitol, it was on a Wednesday on January 6, 2021, and the time stamps on the photos provided in the Statements of facts show times between 3:09 p.m. to 3:19 p.m. Thus, it is simply not possible for the government to lawfully convict the Defendants of "entering and remaining in the United States Capitol, a restricted building, without lawful authority to do so," when the Capitol's official signage and websites proclaim the building is open to the public, and besides that, the Defendants have a constitutional right, under the First Amendment to redress the Government for grievances.

    The Defendant's right to enter the Capitol is not subject to the permission, will, or discretion of the government. Cf., inter alia, *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994); *Ward v. Rock Against Racism*, 491 U.S. 781 (1989); *Weinberg v. City of Chicago*, 310 F.3d 1029 (7th Cir. 2002); *Bay Area Peace Navy*

*v. United States*, 914 F.2d 1224 (9th Cir. 1990); *A Quaker Action Group v. Hickel*, 137 U.S. App. D.C. 176, 421 F.2d 1111 (D.C. Dir. 1969). Additionally, timestamped images that attempt to link the Defendants to the alleged crime do not show them spending more than ten minutes in the Capitol. Thus, given these principles, Count One does not state an offense under federal law upon which any relief can be granted; and must be dismissed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

2. **Counts 2 and 3: Knowing and Willful Disruptive and Disorderly Conduct in a Capitol or Restricted Building.**

Counts two and three are unconstitutional as well, because the people have a right to impede the orderly conduct of the Government by First Amendment protected expressive conduct and advocacy. Count 2 alleges that the Defendants:

> [K]nowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engages in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; *See* 18 U.S.C. § 1752(a)(2)).

Count 3 is essentially a repeat of Count 2, it alleges that:

> An individual or group of individuals may not willfully and knowingly: utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a

>committee of Congress or either House of Congress; *See* 40 U.S.C. § 5104(e)(2)(D)

Both these counts must be dismissed because they conflict with the Defendants' rights and duties under the First Amendment to speak freely, assemble with others, and petition for redress of grievances at the U.S. Capitol. A person's speech or expressive activity is not removed from the ambit of First Amendment protection simply because they were present in a public building, where others allegedly acted unlawfully. The right to engage in activities protected by the First Amendment implicitly includes the right to associate with others in pursuit of a wide range of "political, social, economic, educational, religious, and cultural" goals. *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460, 2 L. Ed. 2d 1488, 78 S. Ct. 1163 (1958) (holding that freedom of speech encompasses "freedom to engage in association for the advancement of beliefs and ideas") (cited in *White v. Lee*, 227 F.3d 1214, 1228 (9th Cir. 2000). In *Christian Gospel Church*, the court stated that whatever their opinions were of the "Plaintiffs goals," they were engaging actively in the "decisions of the government," which is something that citizens should be "encouraged to do." *See* Christian Gospel Church Inc. v. San Francisco, 896 F.2d 1221 (1990) at 1226. Therefore, it is crucial to stress that just because someone advocates for a wrongful act, their speech or petitioning endeavors does not automatically lose First Amendment protection. *See White v. Lee*, 227 F.3d 1214,

1227 (9th Cir. 2000); *See also Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969); *Noto v. United States*, 367 U.S. 290, 291 (1961).

It is evident that the term "advocacy, as used in *Brandenburg*," includes all of the First Amendment's other protected freedoms of expression in addition to the right of free speech. *Id.* at *Brandenburg* 449 n.4 (cited in *White v. Lee*, 227 F.3d at 1228); *see also Communist Party of Indiana Whitcomb*, 414 U.S. 441, 448-50 (1974) (applying Brandenburg principles to state regulation of access to the ballot). The Supreme Court has also specified that the "right to petition is inseparable from and inspired by," the same principles as the freedoms of speech, publication, and assembling. *See McDonald v. Smith*, 472 U.S. 479, 485 (1985). Furthermore, "[t]he mere fact that citizens urge their government to adopt measures that may be unlawful does not deprive the speech involved of its First Amendment protection." *See Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 2000 U.S. App. (9th Cir. 2000) (affirming dismissal under Noerr-Pennington doctrine of complaint challenging lobbying of county officials that allegedly resulted in the unconstitutional taking of plaintiff's property) (cited in *White v. Lee* at 1228). In *Brandenburg,* the phrase "imminent lawless action" describes the use of physical violence or intent to physically disrupt, such as a "riot." *See Brandenburg,* 395 U.S. 444 at 448. On the other hand, the First Amendment gives complete protection to all "peaceful speech, even speech that calls for "civil disobedience."

7

*See White v. Lee* at 1228; *see also Noto v. United States*, 367 U.S. 290, 297-298 (1961) ("the mere abstract teaching of the moral propriety or even moral necessity for a resort to force and violence, is not the same as preparing a group for violent action").

Additionally, "in the First Amendment context," courts need to consider the substance of government action, such as the "threat of invoking legal sanctions and other means of coercion, persuasion, and intimidation," which will violate the rights associated with the First Amendment. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 67 (1963) (cited in *White v. Lee* at 1228). Along with measures taken by government officials that "would chill or silence" a reasonable person from future First Amendment activity, are also violations. *See Mendocino Environmental Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999).

Here, there is an obvious infringement of the Defendants' First Amendment rights as a result of the Government's actions, most notably the baseless charges in this current case, brought against the Defendants. Despite the fact that there are no facts or evidence to support the accusations against the Defendants, the Government is also attempting to stifle and silence free speech in the process. The Defendants have not engaged in any form of "imminent lawless action," fighting words, or violent conduct that would result in unprotected speech. Yet, the Government is attempting to connect photos of the Defendants as evidence of their

presence in the Capitol and attributing allegedly violent conduct of other people to convict them. It is ludicrous, for the Government to associate going into a public building for less than ten minutes and walking around and observing, as someone would do in a museum, to charges of violent entry, disorderly conduct, and loud, threatening or abusive language. On top of that, the time on the photos indicate that the Defendants entered the public building over an hour after the "unlawful conduct" described by the Government as not being protected by the First Amendment occurred.

However, even if one were to entertain this idea, that the Defendants "knowingly intended to impede the orderly conduct of Government business and official functions" at the Capitol, the Defendants nevertheless still had a protected constitutional right to walk inside the Capitol, express their opinions, and communicate their grievances. Without some specific facts or evidence of violent or lawless conduct or even threatening and abusive language by the Defendants, the Government's allegations in these two counts fail to state a claim and as a result violate the Defendants' First Amendment rights. Accordingly, counts 2 and 3, like count 1, simply do not state valid claims in the context of people demonstrating and expressing their views and should also be dismissed.

   **3.  Count 4: Parading, Demonstrating, or Picketing in a Capitol Building**

The final count in the Defendant's indictment, Count 4, also violates the Constitution. Count 4 alleges that "On or about January 6, 2021, the Defendants did willfully and knowingly parade, demonstrate, or picket in any of the Capitol Buildings." *See* 40 U.S.C. § 5104(e)(2)(G)). Yet, the First Amendment itself was designed to protect the right to every citizen to, "reach the minds of willing listeners and to do so there must be opportunity to win their attention." *See Kovacs v. Cooper*, 336 U.S. 77, 87 (1949). Whereas "Freedom of speech and of assembly for any lawful purpose are rights of personal liberty secured to all persons, by the Due Process Clause of the Fourteenth Amendment." *See Hague, 307* U. S. at 519.

The birthright of every American includes the right to parade, demonstrate, and picket for a redress of grievances. *See Hill v. Colo.*, 530 U.S. 703, 721-22 (2000) (which defines "demonstrate" as "to make a public display of sentiment for or against a person or cause" and "picket" as an effort "to persuade or otherwise influence") (quoting Webster's Third New International Dictionary). The no-demonstration and no-picketing zone established by 40 U.S.C. § 5104(e)(2)(G)) in a 1.5-million-square-foot building is the largest infringement on basic First Amendment rights ever imposed anywhere in the United States. The indictment against the Defendants is intended to chill the Defendants' (and millions of others') right to petition and speak out against abuses of power in the Capitol, if for no other reason. By their actions, the Government seeks to "insulate congressional

representatives, staff, officials and attendees from receiving the messages of the Defendants and other protestors and petitioners." *See Gresham v. Peterson*, 225 F.3d 899 (7th Cir. 2000) (where the court held that such efforts by the government are undeniably unconstitutional). While there are few instances where courts have provided for "free speech zones" (such as college campuses), there have also been limited restrictions by the Government on picketing and demonstration, as well. *See Madsen v. Women's Health Ctr.*, 512 U.S. 753 (1994) at 771 (where the Supreme Court determined that a 300-foot buffer between protesters and the entrance to an abortion clinic was too great a restriction on speech, however, a thirty-six-foot buffer was acceptable). However, there has never been a situation where any court allowed the Government to silence and censor all petitioning and protesting in such a vast radius, as they seek to do here.

In *Blair v. City of Evansville,* a protestor who picketed a speech by Vice President Dick Cheney in 2002, was arrested for "disorderly conduct" for merely holding a sign that stated "Cheney 19th Century Energy Man" at an event. *See Blair*, 361 F. Supp. 2d 846 (S.D. Ind. 2005) (the court held that the restriction of protesters burdened speech substantially more than was necessary to further the Government's goals of safety). Even more than in *Blair*, the expansive speech and picketing restrictions here (effectively the entire 1.5 million square foot Capitol complex) are massively overexpansive and not narrowly tailored to serve a

significant government interest. *See United States v. Albertini*, 472 U.S. 675, 689 (1985)). While there is an interest for the Vice President and Congress to be properly protected from danger, the First Amendment requires that the Vice president and Congress cannot "be entirely insulated from picketing and advocacy." *See Blair*, 361 F. Supp. 2d 846 (S.D. Ind. 2005) at 858. Furthermore, other cases that have looked at restrictions on access to public buildings and have found an over-broad violation. *See Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 861-62 (9th Cir. 2004) (where 200 and 265 feet security zones found over broad); *See also Bay Area Peace Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990) (where seventy-five yard security zone found over broad because it prevented demonstration from reaching intended audience).

    Note that here, the government is asserting that the entire U.S. Capitol—one of the largest public buildings in the United States—is a no free speech and no picketing zone. Significantly, some federal courts have already held that the "West Front Lawn is a traditional public forum where demonstrations must be allowed." *See Lederman v. U.S.*, 291 F.3d at 44.  In *Lederman,* the D.C. Circuit declared facially unconstitutional a "regulation banning leafleting and other 'demonstration activities' on the sidewalk at the foot of the House and Senate steps on the East Front of the United States Capitol." 291 F.3d at 39 (concluded that the "ban's absolute nature" rendered the regulation not narrowly tailored, as "[s]ome banned

activities" "cannot possibly" interfere "with the stated objectives of traffic control and safety) *Id.* at 45. Finally, there is an expectation reinforced by the understanding that our Constitutional liberties include the "individual's decision to remain in a public place of his choice." *See City of Chicago v. Morales*, 527 U.S. 41, 54, 119 S. Ct. 1849, 144 L. Ed. 2d 67 (1999) (plurality opinion); *See also*, *Williams v. Fears*, 179 U.S. 270, 274, 21 S. Ct. 128, 45 L. Ed. 186 (1900). The "freedom to move around as we see fit and be where we want to be with minimal legal constraint is indeed part of our heritage." *See Kent v. Dulles*, 357 U.S. 116, 126, 78 S. Ct. 1113, 2 L. Ed. 2d 1204 (1958) (cited in *Conley v. United States*, 79 A.3d 270, 286-87 (D.C. 2013).

Here, the statute 40 U.S.C. § 5104(e)(2)(G), which forbids "willfully and knowingly" parading, demonstrating, or picketing in any of the Capitol Buildings is unconstitutional both on its face and as applied to the alleged conduct of the Defendants. The Government is attempting to punish the Defendants for acts that are protected by the Constitution and as a result the statute chills free speech activities in the process without providing alternatives. In this very case, the Defendants are accused of nothing more than walking into the Capitol during normal business hours as part of a demonstration of expression regarding the fairness of the presidential election. The Defendants were inside of this public building for no more than ten minutes and did not engage in any acts that would be

considered violent. The People have a Constitutional right to, "peaceably assemble for the purpose of petitioning Congress for a redress of grievances, or for anything else connected with the powers or the duties of the national government," it is an attribute of national citizenship, and "under the protection of, and guaranteed by, the United States." *See Hague v. Comm. For Ind. Org.,* 307 U.S. 496, 513, 59 S. Ct. 954, 963 (1939). As a result, the Defendants have a First Amendment right to express their opinions in such a manner, let alone walk around in a public building without being criminalized for it. In conclusion, for all the above-described reasons, the indictment in this case must be dismissed.

    Accordingly, Defendants (Lesperance, Cusick Jr., and Cusick) request an order dismissing all four counts against them with prejudice.

Dated: February 3, 2023

                      Respectfully submitted,

/s/ John M. Pierce
John M. Pierce
John Pierce Law Firm
21550 Oxnard St. 3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

*Attorney for Defendants*

CERTIFICATE OF SERVICE

I hereby certify that, on February, 03, 2023, this reply was filed via the Court's electronic filing system, which constitutes service upon all counsel of record.

*/s/ John M. Pierce*
John M. Pierce