UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : : : | |
| v. | : : | Case No 1:21-cr-575 (JDB) |
| DAVID JOHN LESPERANCE, CASEY CUSICK, and JAMES VARNELL CUSICK, JR., | : : : : | |
| Defendants. | : : | |

**DEFENDANT'S REPLY IN SUPPORT OF
DEFENDANT'MOTION TO DISMISS
ON FIRST AMENDMENT GROUNDS**

COMES NOW, Defendants, David John Lesperance ("Lesperance"), Casey Cusick ("Cusick"), and James Varnell Cusick Jr. ("Cusick Jr."), by and through undersigned counsel John Pierce, and hereby move this Motion to dismiss all counts of the indictment against them, on 1st Amendment grounds.

## I. INTRODUCTION AND CONTEXT RELEVANT TO THE MOTION

The Government has glaringly and conspicuously neglected to allege an essential element of the crime alleged under Count of a violation of 18 U.S.C. 1752(a)(1).

Unable to break out of this mistake the Government repeats a mistake over and over, failing to actually charge these and other Defendants under 18 U.S.C. 1752(a)(1).

The Government has filed an Opposition to Defendants' Motion at Dkt. #49, which recites "Section 1752(a)(1) authorizes the prosecution of any individual who '***knowingly*** enters

or remains in any restricted building or grounds without lawful authority to do so." 18 U.S.C. § 1752(a)(1).'" *(Emphasis added by Defendants' counsel.)*

Thus, the Government admits and confesses that there is no crime committed under 18 U.S.C. § 1752(a)(1) unless a Defendant is proven beyond a reasonable doubt to have "**_KNOWINGLY_**" entered or remained in any restricted building or grounds.

The Government conspicuously refuses to allege that any of the Defendants or anyone else was placed on notice that the Capitol or its grounds had been restricted.[1]

Over and over, as if a chant, the Government asserts here and elsewhere that "Because the U.S. Capitol building was restricted on January 6 due to the attendance of the Vice President and their family (all of whom were Secret Service protectees), judges of this Court have recognized that the U.S. Capitol qualified as a 'restricted building'"

However, the Capitol building was not restricted on January 6, 2021, because a legally effective restriction requires putting the public on notice of the restriction – which the Government failed to do. This is legally the same as issuing a domestic protective order, but then never serving it on the person who is the subject of the order. No restriction occurred because it was not delivered to the public to which it was intended to be addressed.

Instead, the U.S. Capitol Police pinned paper signs roughly 11" by 14" to bike racks… mobile, lightweight, easily movable bike racks.

But those didn't last long. Nor could the U.S. Capitol Police with more than a century of experience with protests reasonably imagine that small, flimsy, paper and laminated signs would remain in place. No one would reasonably rely upon paper signs 11" by 14" pinned to mobile bike racks to effect legal notice. While the Congress itself appropriated over $1 trillion in

---

[1] The Government does try to argue it in its Opposition, but has not alleged it in any allegation. The claims of the Opposition are counter-factual and insupportable in reality.

infrastructure spending during the Obama Administration and massive infrastructure spending during the COVID economy, it is not reasonable for Congress to fail to invest in a few permanent, durable signs rather than using paper.

As much as people might not want to hear it, the video is clear. Video recordings show that heavily cloaked individuals sat on low walls by the road waiting for the crowds to approach from the rally at the Ellipse, then as soon as the crowds turn the corner about a mile away, those individuals are seen in the video recordings leaping up and removing the bike racks and farm-like mesh fences and discarding them off the paths so that the signs are hidden from view. After initial skirmishes by a few, all traces of the flimsy paper signs were gone by the time these Defendants and the majority of demonstrators arrived at the Capitol.

But whatever the reason, whatever one's tolerance for looking at the video evidence may be, whomever is the culprit, the signs were gone by the time the vast majority of the crowds – including these Defendants – reached Capitol Hill.

No amount of denial by the Government can change that reality. No notice was given.

But the Government does not _allege_ that it provided any such notice.

The Government does not _allege_ that the Defendants were placed on notice so as to "**_knowingly_**" enter any restricted building or grounds, which is an essential element of the crime charged.

Because the Government cannot alleged that it placed Defendants on notice the charge fails.

Prosecutors have arranged numerous tours of the U.S. Capitol building to defense counsel working on January 6 cases – but only the inside of the building. An intrepid attorney must venture on their or her own outside the building to inspect the permanent signs erected around

the outside.  Surely there are signs warning the public that the building is subject to being closed and/or restricted?  No, there are no such signs.  Signs are neither a novel nor expensive technology.

The Government references the visitor's center.  Surely there are permanent signs posted limiting entrance only through the visitor's center?  No, those signs are not there either.  A visitor's center is a service provided to the public.  One may not assume that the existence of a visitor's center operates as a restriction.

On the contrary, the U.S. Capitol Police issued six (6) different permits for demonstrations to be held on the U.S. Capitol Grounds on the afternoon of January 6, 2021, simultaneous with the meeting of the Joint Session of Congress.

See permits issued by Scott Grossi of the U.S. Capitol Police, hyperlinked from each item on the list below.

> [Brian Lewis Demo Pemit](#)
>
> [Jesus Lives Demo Permit](#)
>
> [One Nation Under God Permit](#)
>
> [Rock Ministries Demo Permit](#)
>
> [Virginia Freedom Keepers Demo Permit](#)
>
> [Women For a Great America Demo Permit](#)

Thus, not only were there no notices to legally effect a restriction, but the U.S. Capitol Police affirmatively *invited* demonstrators onto the U.S. Capitol Grounds to attend any or all of six (6) different demonstrations.  Because human beings generally cannot fly through the air,

these permits issued by USCP authorize people to walk across the Capitol Grounds to and from the permitted demonstration locations and even among them.

The Government's Opposition argues that "The Capitol's exterior grounds were closed to the public and surrounded by law enforcement officers, barricades, and signage," even while the U.S. Capitol Police had actually, in fact, opened the Capitol Grounds to demonstrators by issuing formal, official permits for lawful demonstrations to occur at that same time on those grounds.

## II. CHARGES AGAINST DEFENDANTS BY INFORMATION

By Information filed in the record on September 13, 2021, at Dkt. # 1, the Defendants were charged with four misdemeanors.

    A. COUNT ONE alleging Entering and Remaining in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(1).

    B. COUNT TWO alleging Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2)

    C. COUNT THREE alleging Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D)

    D. COUNT FOUR alleging Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G)

## III. COUNT IV VIOLATES THE FIRST AMENDMENT OF US CONSTITUTION

The Government misses the mark in failing to place the charges under 18 U.S.C. 5104(e)(2)(G) within their proper context as part of a comprehensive, extensive legal regime.

The Opposition argues that "The defendants contend that these statutes' prohibition on disorderly and disruptive conduct violates the First Amendment. ECF No. 45 at 5-9."

The Defendants of course *do not* argue any such thing.

The Government presents analysis of restrictions upon free speech, but fails to account for the overlap with 18 U.S.C. 5104(e)(2)(D) and 18 U.S.C. 1752(a)(2).

Counts II, III, and IV are multiplicious, redundant, duplicative, repetitive, the same, and unnecessarily superfluous.

Meanwhile, COUNT FOUR alleging Parading, Demonstrating, or Picketing in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(G) can be different from COUNT THREE alleging Disorderly Conduct in a Capitol Building, in violation of Title 40, United States Code, Section 5104(e)(2)(D) and COUNT TWO alleging Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of Title 18, United States Code, Section 1752(a)(2) only in free speech protected under the First Amendment of the U.S. Constitution.

"Parading, Demonstrating, or Picketing" when Defendants are already charged with "Disorderly and Disruptive Conduct" can only include pure First Amendment expression.

Any form of "parading" as a combination of expression and conduct which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.

Any form of "demonstration" as a combination of expression and conduct which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.

Any form of "picketing" as a combination of expression and conduct which would constitute "Disorderly and Disruptive Conduct" is already covered by Counts II and III.

Thus, only pure expression remains.  Where the Congress has engaged in poor or ill-considered drafting, it is not for the Court nor certainly the Defendants to fix Congress' mistake.

Therefore, Count IV is an unconstitutional attack on free speech under the First Amendment. The only additional content of Count IV is expression protected by the First Amendment.  If such expressive conduct were "disorderly" it would already be covered by Counts II and III.  If such expressive conduct were "disruptive" it would already be covered by Counts II and III.  Therefore only First Amendment (free speech and petitioning the government for redress of grievances) expressions and messages are covered within Count IV.

The fact that any constitutional grounds for restricting "parading, demonstrating, or picketing" are already dealt with under 18 U.S.C. 5104(e)(2)(D) and 18 U.S.C. 1752(a)(2) means that only purely expressive messaging is left remaining within 18 U.S.C. 1752(a)(1).

Any application of 18 U.S.C. 1752(a)(1) which could sometimes be constitutional to regulate in a content-free manner are multiplitious and subject to dismissal under Federal Rules of Criminal Procedure Rule 12, because they would duplicate the prohibitions of 18 U.S.C. 5104(e)(2)(D) and 18 U.S.C. 1752(a)(2).

Any application of 18 U.S.C. 1752(a)(1) which not merely duplicate the prohibitions of 18 U.S.C. 5104(e)(2)(D) and 18 U.S.C. 1752(a)(2) would be pure expressions or petitioning the government which are protected under the guarantees of the U.S. Constitution's First Amendment.

Perhaps we should view the scenario from a different angle:  Either (a) Count IV must be stricken because it is multiplitious of Counts II and III (which are also multiplitious of each other), or (b) Count IV must be stricken because as applied it violates the First Amendment.

Therefore, the Government may elect for which reason Count IV must be stricken. Generally, the interpretation that avoids a constitutional conflict is always to be preferred in Federal law.

### IV. FACT FREE INFORMATION IS NOT ADEQUATE

In *Hunter v. District of Columbia* , 47 App. D.C. 406 (D.C. Cir. 1918), for example, the D.C. Circuit Court examined an indictment that alleged that the defendants had

> "congregate[d] and assemble[d] on Pennsylvania avenue, N.W., [and] did then and there crowd, obstruct, and incommode the free use of the sidewalk thereof on said avenue" in violation of the unlawful assembly statute. *Id.* at 408. Beyond the general terms of acts prohibited by the statute, there was no averment of fact "to inform defendants of the nature of the acts which [were] relied upon by the prosecution as constituting alleged obstruction of the sidewalk, or that would enable defendants to make an intelligent defense, much less to advise the court of the sufficiency of the charge in law to support a conviction." *Id.* at 410. And the fact that the charging document "fail[ed] to set out the acts committed by the defendants which constituted the crowding obstructing of the free use of the walk by them[,]" *Id.* at 409, was a fatal flaw.

As stated by the Hunter Court:

> [i]t is elementary that an information or indictment must set out the ***facts*** constituting the offense, with sufficient clearness to apprise the defendant of the charge he is expected to meet, and to inform the court of their sufficiency to sustain the conviction. ... In other words, when the accused is led to the bar of justice, the information or indictment must contain the elements of the offense with which he is charged, with sufficient clearness to fully advise him of the ***exact*** crime which he is alleged to have committed.

*Id.* at 409, 410 *(emphasis added)* (internal quotation marks and citation omitted).

The *Hunter* Court also observed that the defendants in that case could have engaged in a number of acts that fell outside the scope of the statute, and thus, by failing to specify the defendants' particular conduct, the indictment was "too vague, general, and uncertain to meet the requirements of the established rules of criminal pleading," which in turn rendered it

"insufficient in law." *Id.* at 410.

Before trial, a defendant in a criminal case may move to dismiss the charging document for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). *See United States v. Akinyoyenu*, 199 F. Supp. 3d 106, 109 (D.D.C. 2016)*(Citations omitted)*. The operative question is whether the allegations in the indictment, if proven, permit a jury to conclude that the defendant committed the criminal offense as charged. *Ankinyoyenu* at 9-10. *See United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C.2012); *United States v. Bowdoin*, 770 F. Supp. 2d 142, 146 (D.D.C.2011). Moreover, in analyzing this, "a district court is limited to reviewing the face of the charging document and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006)(emphasis original).

A valid indictment must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet." *United States v. Pickett*, 353 F.3d 62,67 (D.C. Cir. 2004). The government must state the essential elements of the crime and allegations of "overt acts [constituting the offense] with sufficient specificity." *United States v. Childress*, 58 F.3d 693, 720 (D.C. Cir. 1995).

A criminal complaint is also meant to satisfy at least two constitutional provisions. First, it gives Sixth Amendment notice of the nature and circumstances of the alleged crime so the accused may meet the charge and defend himself. *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001); *Hamling v. United States*, 418 U.S. 87, 117 (1974). Second, a valid indictment fulfills the Fifth Amendment's edicts that citizens are not placed in jeopardy twice for the same offense. *Stirone v. United States*, 361 U.S. 212, 218 (1960); *United States v. Martinez,* 764 F.Supp.2d 166, 170 (D.D.C.2011) (quotations and citations omitted). That is, the allegations must be sufficiently clear, complete, thorough enough, non-generic, and specific to the particular

Defendant to identify if the Defendant were later charged with the same offense that double jeopardy applies to bar a second prosecution of the same offense.

A criminal complaint fulfills these fundamental constitutional provisions when it sets out both the elements of the crime and the factual circumstances that would satisfy those elements when assumed true. *Hamling*, 418 U.S. at 118-19. A criminal complaint may be dismissed as constitutionally insufficient when it does not join the elements with factual allegations. *See Russell v. United States*, 369 U.S. 749, 763-771 (1962); *United States v. Hillie*, 227 F. Supp. 3d 57 (D.D.C. Jan. 5, 2017). The Supreme Court explained:

> "[The second object of an indictment is] to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. For this, facts are to be stated, not conclusions of law alone." *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

### V.  U.S. CAPITOL IS PRESUMPTIVELY OPEN TO THE PUBLIC

The Government likewise recites as a chant that the Capitol is not public or not a public forum, but the reality is otherwise.

> **_The Capitol Grounds_** (excluding such places as the Senate and House floors, committee rooms, etc.) **_have traditionally been open to the public_**; indeed, thousands of people visit them each year. Thus, we cannot agree with the defendants that the Capitol Grounds have ever been characterized by the serenity and quiet of a hospital or library.

*Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575 (D.D.C. 1972) *(emphases added)*.

> The courts in this jurisdiction have long recognized that ***"[t]he United States Capitol is a unique situs for demonstration activity"*** and ***"is a place traditionally open to the public and thousands visit each year to which access cannot be denied broadly or absolutely,*** [a fact which must be weighed] against the government's interest in protecting against possible `damage to buildings and grounds, obstruction of passageways, and even dangers to legislators and staff.'" *Kroll v. United States*, 590 F. Supp. 1282, 1289, 1290 (D.D.C.1983) (*quoting Jeannette Rankin Brigade v. Chief of Capitol Police*, 342 F. Supp. 575, 583-85 (D.D.C.), *aff'd mem.,* 409 U.S. 972, 93 S. Ct. 311, 34 L. Ed. 2d 236 (1972)).

*Wheelock v. United States* 552 A.2d 503, 506 (D.C. 1988) *(emphases added).*

Yet the Government merely recites a cult-like refrain, daring someone to question it, that the Capitol is like a secret military base.

As admitted by the U.S. Capitol Police Chief of Police Thomas Manger, protests outside the 751 foot long building are a daily occurrence.  Explicitly addressing the events of January 6, 2021, on September 17, 2021, a new Chief of the USCP, Thomas Manger, admitted and confessed among other things, at time stamp 00:18:10:

> **"In terms of how we engage, we handle multiple demonstrations at the Capitol and Supreme Court every day. Every day. Multiple demonstrations."**

"USCP News Conference on "Justice for J6" Rally" was recorded and broadcast live by C-SPAN, and is permanently recorded for viewing at: https://www.c-span.org/video/?514736-1/us-capitol-police-prepare-threats-violence-justice-j6-rally

 And again at time stamp 00:20:09 --

**"We have multiple demonstrations every day."** [2]

Recall that the U.S. Capitol Police is in effect one of two of the complaining witnesses in this case, along with Congress.  So this is an admission by a party opponent.

This afternoon, in the case of *United States v. Nordean*, Case No. 1:21-cr-00175, the same U.S. Attorney's Office prosecuting here called to the witness stand Jason McIntyre, Architect of the Capitol's Office, Deputy Superintendant for Capitol and Capitol Visitors Center. McIntyre's wide-ranging testimony included testifying that the West side of the U.S. Capitol building and grounds is host to the Labor's Day concert series, where many thousands of people

---

[2]     One assumes that there is a little bit of hyperbole in the Chief's claim that this happens "every day" but the USCP Chief is making clear that protests are a very central part of activity at or around the U.S. Capitol.  Demonstrations are certainly not a crime or evidence of a crime.

– in fact, one may add, far more than on January 6, 2021 – are able to attend and listen to musical concerts by orchestras positioned in the same spot as the inaugural stage that was being set up on January 6, 2021.  By the way, the same is true for other holiday concerts held on the Capitol Grounds.

McIntyre also testified that the Capitol is used for tours, for people to see the artwork and statues.  McIntyre repeatedly emphasized how the Capitol is a museum as well as a work place.  When asked by Carmen Hernandez:  "The Capitol is not just place of work but also a museum?"  McIntyre testified:  "Yes, the primary building of our democracy.  The center of our congressional business on a daily basis."

## VI. GOVERNMENT'S FAILURE TO ALLEGE FACTS SHOWING GUILT

Defendants are not alleged to have damaged any property in or around the District of Columbia on or about January 6, 2021, nor harmed or interfered with any law enforcement official or other official nor committed any crime but merely allegedly being present in the U.S. Capitol for 18 minutes.

Yet, as has become a disturbing and conspicuous trend, the Government argues that:

A. "a large crowd gathered outside the United States Capitol and entered the restricted grounds." Without identifying who is this large crowd or what it has to do with these Defendants as individuals.  Crowds are not collectively guilty.  Only individual Defendants can be found guilty.

B. "individuals forced their way through, up, and over barricades and advanced to the Capitol's exterior."  But what individuals?  What do they have to do with these Defendants?  Clearly nothing.

C. "Around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol building," But why are these unnamed individuals remotely relevant to these individual Defendants?

D. "In the intervening period, scores of individuals entered the building without authority." But again, how is this relevant to these Defendants?

E. Like millions of tourists every year and an estimated 500,000 peaceful demonstrators who never went to Capitol Hill on January 6, 2021, Defendants exercised their Constitutionally-recognized "Right to Travel" (found implied by the U.S. Supreme Court) and travelled to the Nation's Capitol.

F. "For their part, the defendants traveled from Florida to Washington, D.C. on January 5, 2021, and attended former President Trump's speech at the Ellipse on January 6. The defendants then went to the U.S. Capitol." So there is something wrong with traveling to Washington, D.C.? This will come as a shock to the crucial tourism industry of the District of Columbia. There is something wrong with attending a speech at the Ellipse? There is something wrong with going to the U.S. Capitol? The Information is defective.

It is becoming clear that the U.S. Attorney's Office has crossed beyond traditional criminal law and is now trying to convict Defendants for crimes committed by other people and/or as collective guilt. But there are no guilty crowds. There can only be guilty individuals.

## VII. IDEA THAT SEEING SIGNS OF A RIOT CREATE GUILT

On April 6, 2022, Judge Trevor McFadden provided a very interesting split decision, including in *United States v. Matthew Martin*, Case No. **1:21-cr-00394, in this District.**

Judge McFadden found Matthew Martin not guilty because the U.S. Capitol Police had not given notice to the public (that is, it was not still visible after efforts by some to remove barricades) and police officers did not express any discouragement of Martin entering the Capitol.

McFadden specifically ruled that the signs that had been posted earlier in the day were no longer visible by the time that the majority of the crowds reached the U.S. Capitol.

However, McFadden found a co-Defendant had crawled over walls and other obstructions to enter the Capitol. Thus, Judge McFadden found, the second co-Defendant did not need to see signs posted to realize that he was not supposed to be entering the building, if he had to crawl over walls and dodge police officers to do it.

But the Government has stretched or misunderstood Judge McFadden's rulings. Ever since, the Government has been fixated on the claim that Defendants saw some people rioting. That is not what McFadden decided, however. The ruling was not that simply seeing other people engaged in misconduct causes one to be guilty. Seeing guilt does not create guilt.

If out of an estimated 10,000 people at or around the U.S. Capitol, several hundred of them actually did riot, break things, and assault people including law enforcement, this would in no way be legally effective to tell the Defendants that the area was restricted. It would alert an average person of reasonable intelligence that some people were about to get arrested, while the remainder of the crowd could continue to peacefully demonstrate.

Rather, McFadden ruled, Martin was reasonably aware that he was not supposed to be entering the Capitol if he could not do it normally, walking in the door, but had to go to extraordinary efforts crawling over walls and dodging police to get into the building.

## VIII.  CONCLUSION

For the foregoing, reasons, notwithstanding the Government's Opposition, Defendants continues to maintain that the Court should grant their motion.

**COUNSEL FOR THE DEFENDANT**

*/s/ John Pierce*
John M. Pierce
JOHN PIERCE LAW
21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

**CERTIFICATE OF SERVICE**

    I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

    By and through: */s/ Francesco Valentini*
    Francesco Valentini
    D.C. Bar No. 986769
    Trial Attorney
    United States Department of Justice, Criminal Division
    Detailed to the D.C. United States Attorney's Office
    601 D Street NW
    Washington, D.C. 20530
    (202) 598-2337
    francesco.valentini@usdoj.gov

    */s/ John Pierce*
    John M. Pierce