## Joint Clients Disclosure and Consent Form

Roger I. Roots, Esq. ("Attorney") represents David John Lesperance, Casey Cusick, and James Varnell Cusick Jr. (hereinafter referred to collectively as "Client," "Clients," and "Joint Clients") in connection with the criminal charges brought against them by the United States government relating to the events at the United States Capitol on January 6th in Case No. 1:21-cr-575 (JDB) in the United States District Court for the District of Columbia (the "Engagement").

While joint representation may result in economic or tactical advantages, it also involves risks and potential conflicts of interest. This disclosure serves to inform each Client in writing of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to each Client arising from the proposed joint representation, and to obtain the informed written consent of each Client. It also details what Mr. Roots perceives to be the relevant circumstances and the actual and/or reasonably foreseeable adverse consequences of joint representation.

By executing this form, Clients each are knowingly, intelligently, and competently waiving any potential conflicts of interest as summarized below, and as set forth in the conflicts counsel's reports and the Court's prior colloquies on this issue throughout the course of these proceedings. These waivers are with respect to Mr. Roots' joint representation specifically.

Assuming that all Clients provide their informed written consent, Mr. Roots agrees to represent Joint Clients in the Engagement. Mr. Roots understands that this arrangement is desired by Joint Clients as a means of securing the economic and tactical advantage of joint representation.

The applicable ethical rules requires Mr. Roots to provide written disclosure of any actual and reasonably foreseeable adverse consequences arising from the proposed joint representation, and to obtain all clients' informed written consent to the joint representation. While Mr. Roots does not perceive any actual or reasonably foreseeable adverse consequences at this time, Joint Clients should consider the following potential adverse consequences prior to consenting to the proposed joint representation. Some of these apply to joint representations generally, and some of them apply to the specific issues raised in this case:

> (1) When an attorney represents only one Client, there is no concern regarding shared or divided loyalties; rather all of the attorney's efforts are focused on representing the interests of that one Client. When an attorney represents two or more clients in the same matter, the attorney acts to protect the interests of each Client, which may result in divided, or at least shared, attorney-client loyalties. Issues may arise as to which Mr. Roots' representation of any one Client may be limited by Mr. Roots' representation of any other Joint Client. While neither Mr. Roots nor the Joint Clients are aware of any such issues at this time, divided loyalty is always a risk in the event of joint representation.

(2) Attorneys owe clients a duty to preserve secrets and confidential communications, unless that duty is excused by law. When an attorney represents more than one Clients in a matter, it is possible there may be no attorney-client privilege with respect to communications that take place between any of the Joint Clients and Mr. Roots should any of the Joint Clients ever have a dispute in which those communications are relevant. Mr. Roots has a duty to keep all of the Joint Clients reasonably informed of significant developments. Any information either of the Joint Clients discloses to Mr. Roots during the course of the joint representation may be disclosed to the jointly represented clients during the course of the joint representation.

(3) Conflicts may arise in particular in this case regarding numerous specific issues:

(a)     <u>Plea negotiations</u>: Were the government to extend "wired" plea offers to each of the Joint Clients in this case such that for any one Client to accept a plea offer, all three would have to do so, Mr. Roots' duty of loyalty to a Client who wanted to reject a government plea offer that the other two Clients wanted to accept would be compromised and adversely affected. Such a scenario also would mean that the Client who wanted to reject the plea offer would be taking a position adverse to another Client. Separately, were any plea offers, regardless of whether they were "wired," to require "insulating" statements, that could well create a conflict for Mr. Roots' representation of Joint Clients in this matter. Even if a plea offer were not wired, during plea negotiations, in an effort to secure a more favorable plea offer for one Client, by representing three clients in the same case Mr. Roots might have to argue the relative culpability of another Client, and were a plea offer extended to one client that required cooperation and testimony against another Client, that scenario would present a conflict for Mr. Roots.

(b)     <u>Testifying at Trial</u>: There is also the potential that at a joint trial, were one or more of the Joint Clients to want to testify and if the testimony of a testifying Client of Mr. Roots were to incriminate the others, he would be forced to cross-examine his own Client. Were he to do so less than vigorously due to his allegiance to the testifying-Client-codefendant, arguably the non-testifying Clients would not be receiving the full zealous representation to which they are entitled under the Sixth Amendment. Were he to do so forcefully, or at all, he would be violating his obligation to the testifying-Client-codefendant.

(c)     <u>Inconsistent Defenses at Trial</u>: Also at trial, notwithstanding Mr. Roots' view that his three Clients in this case would not have divergent defenses, were they to have inconsistent defenses, or were the government's quantum of proof be greater against one of them than against the others, Mr. Roots' allegiance to one Client might be compromised while serving the others.

(d)    Quantum of Proof: It is also possible that the government may have a greater quantum of proof against one Client or Clients than the other(s). This raises the prospect that the Clients against whom there is less quantum of proof could be "tainted" by the proof against the other(s). If this were the case, Mr. Roots may be constrained in how zealously he attempts to demonstrate that the quantum of proof is less for certain Clients due to his duty to advocate for the Client(s) against whom there is a greater quantum of proof.

(e)    Closing Argument: As in the presentation of evidence, in closing argument, a single lawyer representing three codefendants in this case might need to inculpate or impugn one of his other clients in service to defending another.

(f)    Sentencing: To secure the most favorable possible sentence for one Client, at sentencing Mr. Roots might have to make arguments regarding the relative culpability of his Clients, thereby requiring him to make arguments adverse to a Client he maintains is more culpable than the others.

(4) Joint representation may also create an issue regarding custody, or control, of the original file when an attorney-client relationship ends. By signing this agreement, each of you agree that if Mr. Roots stops representing one of you, but continues to represent the other(s), the client(s) represented by Mr. Roots is entitled to maintain custody or control of the original file. The other party or parties is/are entitled to a copy of Client's papers as defined in applicable ethics rules.

(5) In the event of a dispute or conflict between any of the Joint Clients, there is a risk that Mr. Roots may be disqualified from representing one or more of the Joint Clients or that it may otherwise be inappropriate for Mr. Roots to continue with the joint representation absent written consent from each of the Joint Clients.

Because there is currently no conflict of interest, Mr. Roots may jointly represent Joint Clients in connection with the Engagement provided that Joint Clients all give informed consent in writing. Each of the Joint Clients should feel free to consult with independent counsel before finalizing your decision to proceed with the joint representation, including whether or not to sign this conflict disclosure and waiver. Mr. Roots emphasizes that each of the Joint Clients remains free to seek independent counsel at any time even if they decide to sign this consent.

Notwithstanding the foregoing, it is Mr. Roots' current understanding that each of the Joint Clients desires to have Mr. Roots jointly represent them in the Engagement. By signing this form, each of the Clients expressly acknowledges that he: (1) has carefully read and fully understands the disclosures set forth above; (2) has carefully considered all of the circumstances and potential conflicts described above; (3) has had the opportunity to consult with independent counsel

regarding the disclosures and consent in this agreement; and (4) agrees to the joint representation by Mr. Roots of Clients in the Engagement.

Dated: July 5, 2023

_____
**David John Lesperance**

Dated: July 5, 2023

_____
**Casey Cusick**

Dated: July 5, 2023

*JimCusick*
JimCusick (Jul 5, 2023 19:10 EDT)
_____
**James Varnell Cusick Jr.**