**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


UNITED STATES OF AMERICA,         .
                                  .
          Plaintiff,              .   CR No. 21-0575 (JDB)
                                  .
     v.                           .
                                  .
01 DAVID JOHN LESPERANCE,         .   Washington, D.C.
02 CASEY CUSICK,                  .   Friday, July 14, 2023
03 JAMES VARNELL CUSICK JR.,      .   9:37 a.m.
                                  .
          Defendants.             .   Pages 886 through 970
. . . . . . . . . . . . . . . .   .


                       DAY 5
            TRANSCRIPT OF JURY TRIAL
      BEFORE THE HONORABLE JOHND D. BATES
            UNITED STATES DISTRICT JUDGE


   <u>APPEARANCES</u>:

For the Government:          FRANCESCO VALENTINI, ESQ.
                             U.S. Department of Justice
                             Criminal Division
                             950 Pennsylvania Avenue NW
                             Washington, DC 20530

                             SONIA MURPHY, ESQ.
                             U.S. Department of Justice
                             Civil Division
                             1100 L Street NW
                             Washington, DC 20530

For Defendants:              JOHN M. PIERCE, ESQ.
                             ROGER ROOTS, ESQ.
                             John Pierce Law, P.C.
                             21550 Oxnard Street
                             Suite 3rd Floor OMB 172
                             Woodland Hills, CA 91367

Court Reporter:              BRYAN A. WAYNE, RPR, CRR
                             U.S. Courthouse, Room 4704-A
                             333 Constitution Avenue NW
                             Washington, DC 20001

C O N T E N T S

Government Closing Argument ......................... 892

Defense Closing Argument ........................... 904

Government Rebuttal Argument ....................... 912

Jury Instructions .................................. 915

Verdict ............................................ 944

Rule 29 Motion and Ruling .......................... 950

\*   \*   \*

<pre>
 1                    P R O C E E D I N G S
 2          THE DEPUTY CLERK:  Criminal Case No. 2021-575,
 3   the United States of America versus David John
 4   Lesperance,defendant No. 1; Casey Cusick, Defendant No. 2,
 5   and James Varnell Cusick, Jr. Defendant No. 3.
 6       This is day five of the jury trial.
 7          THE COURT:  All right.  Good morning.  Are we ready
 8   to go with the closing arguments in the case?
 9          MR. VALENTINI:  Government is ready, Your Honor.
10          THE COURT:  Mr. Roots?
11          MR. ROOTS:  Just one little preliminary matter which
12   involves an exhibit.  Actually, two exhibits.  Okay.  If I
13   could get these on the ELMO...
14       So I believe Government Exhibit 503 was something like this
15   image right here.  This is an individual that has been -- and
16   they put on this Area Closed sign on the snow fence behind --
17   this the Government's 503.
18       This individual is one of those mystery, unindicted,
19   suspicious people that his face is fully shown, but for some
20   reason he's not indicted.  He was later seen -- this is way
21   before these defendants ever got there, but the government was
22   allowed to put on this evidence.  We tried to put on some --
23   for example, this image.
24          THE COURT:  You tried to put it on?  What do you mean
25   you tried to put it on?
</pre>

1          MR. ROOTS:  We tried.  If you recall, the government --

2          THE COURT:  This exhibit?  I don't remember this

3     exhibit.

4          MR. ROOTS:  We were not able to get this in.

5          THE COURT:  When did you try to get it in?

6          MR. ROOTS:  This would have been day two of the trial

7     as the FBI agent was on the stand.  After they put on their

8     picture, they were able to get this into evidence, which is

9     very misleading because our defendants were never in this

10    location, never saw this.

11       We had tried to get on some context under Rule 106, the

12    rule of completeness.  We were denied on the grounds that our

13    exhibit list -- this had been on our initial exhibit list, but

14    we were ordered to keep cutting down our exhibit list at the

15    demands of the government.

16       So we were not allowed to show the jury the full context,

17    and this is very misleading.  This same individual who we

18    believe is a good individual, a protected individual of some

19    kind, is the very person that rolled up the snow fence, and

20    the government kept emphasizing this pile of snow fence --

21         THE COURT:  Mr. Roots, that's too late.  You had your

22    opportunities to put on your case.  You closed your case.

23    Then the government was asked about any rebuttal case, and it

24    closed and we closed the evidence yesterday.  I don't remember

25    what you're talking about in terms of attempts to put on these

1    exhibits.  I've never seen that exhibit before, as far as

2    I can tell.  But in any event, it's too late.  The case is

3    closed.  The evidence is done.

4         MR. ROOTS:  Well, it was misleading to the jury and

5    to the Court.

6         THE COURT:  It was misleading to the jury.  You had an

7    opportunity to put on your case.  This didn't come up during

8    your case.  You made no attempt to put in this exhibit, and

9    I'm not going to allow you to do it now.  It's too late.

10        MR. ROOTS:  Well, we'd like to strike 503 and 206, the

11   images of that snow fence laying on the ground.  A government-

12   protected person laid it on ground.

13        THE COURT:  Stop providing me information that isn't in

14   evidence in this case.  I appreciate your views on things, but

15   it isn't in evidence in this case, and I'm not going to strike

16   exhibits at this point either.  It's too late, Mr. Roots.

17        MR. ROOTS:  Thank you, Your Honor.

18        THE COURT:  You're welcome.

19      All right.  With that, let's bring the jury in.

20        MR. VALENTINI:  With apologies, could we address one

21   follow-up to the colloquy that defense counsel just had with

22   the Court?

23        THE COURT:  If you wish.

24        MR. VALENTINI:  I just want to make sure that this

25   issue that was just raised is not somehow injected into

1    closing argument by defense counsel.  I have very limited

2    understanding of what their complaint is; I think the Court

3    addressed it.  I just want to make sure there's not going to

4    be a backhanded way of injecting the same type of issue into

5    the closing argument.  I would like for the Court, if it's so

6    inclined, to admonish defense counsel about that.

7        THE COURT:  Well, both counsel -- I'm assuming

8    there's only two counsel that will be doing the closings.

9    Both counsel are reminded that the closings have to be based

10   on the evidence in record in this case, not on anything that

11   goes beyond the record in this case.  And that's an important

12   consideration for each side to remember, and more need not be

13   said, I don't think.

14       MR. VALENTINI:  Thank you.  And to the point that you

15   made in passing, Your Honor, Ms. Murphy will probably do the

16   rebuttal for the government.

17       THE COURT:  So it is all three counsel that need to be

18   reminded.  Thank you.

19     All right.  Let's bring the jury in.

20     (Jury in at 9:46 a.m.)

21       THE COURT:  Good morning, ladies and gentlemen.  We're

22   now going to hear arguments from each side.  The government

23   will go first.  It will also have a chance to rebut after the

24   defense argument.  And, with that, Mr. Valentini.

25       MR. VALENTINI:  Thank you, Your Honor.

1            GOVERNMENT CLOSING ARGUMENT

2        MR. VALENTINI:  Just like a fire needs air to keep

3    burning, a riot needs rioters, numbers, to keep raging.

4    When the defendants entered and then remained in the Capitol

5    on January 6, 2021, they added their numbers to the riot that

6    was raging in that building.

7        These three individuals joined the mob at the Capitol

8    knowing full well that a riot was unfolding before their eyes.

9    They understood the obvious consequences of what they were

10   doing.  So long as the mob was inside the Capitol, or right

11   in the immediate vicinity of the Capitol, Congress could not

12   resume its work.  It could not certify the election whose

13   results the defendants in this case so vehemently rejected.

14       The defendants' progress, posture, and persistence at the

15   Capitol showed what they were up to.  Their progress.  The

16   progress they made as they advanced steadily from the West Front

17   to the Upper West Terrace into the building, throughout the

18   building, back out onto the Upper West Terrace where they stayed

19   for over an hour after they were funneled out of that building.

20       Their posture, as they paraded around the house of Congress,

21   holding up their cell phones, recording the events, the historic

22   events as one of them called it, while crowding the space that

23   the Capitol Police so desperately needed to clear to allow

24   Congress to continue its proceeding.

25       And their persistence, as they remained on the Upper West

1    Terrace again for over an hour after they had been funneled out

2    of the building until a platoon of riot police cleared the area.

3        Ladies and gentlemen, you have watched a lot of video over

4    the last three days.  You have seen a lot of evidence, and

5    you've heard a lot of testimony.  This morning I will only touch

6    on the most important facts, and I will explain how those facts

7    insert the questions that you will be asked to address in your

8    deliberations.

9        The defendants approached the Capitol grounds on the west

10   side after attending the Stop the Steal rally at the Ellipse.

11   They entered the Capitol restricted perimeter, and they made

12   their way to the Capitol building.  Captain Summers explained

13   everything you need to know about that restricted perimeter.

14   No member of the public was allowed to be in that perimeter

15   marked in red in Exhibit 502 of the government.

16       What the defendants saw as they approached the Capitol is

17   no mystery.  It is no mystery because much of it you have seen

18   in Mr. Lesperance's videos, Exhibits 205 through 224.  Examine

19   those videos as you deliberate.

20       The one thing is clear:  The defendants saw everything they

21   needed to see to know that they were not allowed to be there

22   that day, and they heard everything they needed to hear to know

23   they were not allowed to be there that day.  And they even

24   smelled what they needed to smell to know they were not allowed

25   to be there that day.

1          For one thing, the defendants saw scores of fellow rioters

2     descending on the West Lawn.  They also saw multiple individuals

3     scaling the West Front of the Capitol building.  That sight

4     alone is an unmistakable sign that the defendants were not

5     allowed to be there on January 6.

6          But these defendants didn't care.  They just wanted to get

7     into the Capitol building, and so they kept going.  "We're

8     almost in, man.  Let's go."  "Yeah, let's go," said one of them.

9     The others said similar things, words to the same effect.  These

10    are the words they spoke as they approached the Capitol on

11    January 6.

12         Then Casey Cusick said someone fell off the wall on the

13    Capitol West Front.  Think about that sight.  Think about what

14    that means, a man falling off a wall on the front of the Capitol.

15    But to Casey Cusick, he didn't care.  He just kept going.

16         The defendants also saw snow fencing.  You've all learned

17    what snow fencing is.  And they saw barricades and Area Closed

18    signs, and they marched by lots and lots of riot police officers

19    in hard gear.

20         You saw Exhibit 208 from the government, another video from

21    Mr. Lesperance's iCloud account.  If you have any questions

22    about what the defendants saw at the Capitol, go back to Exhibit

23    208, check out that exhibit.

24         Now, you have heard some theories from the defense about the

25    signs, especially from one of the last witnesses who testified

1    yesterday.  Those are conspiracy theories.  Please use your

2    judgment in your deliberations.  The truth is simple.  Some

3    signs, some fencing, some barriers in fact were torn down when

4    the mob came through, but they were still scattered and still

5    visible.  The defendants knew and saw everything they needed to

6    see to know they were not supposed to be there on January 6.

7        As they got closer to the Capitol building, the defendants

8    also saw more signs, more indication that they could absolutely

9    not be there that day.  They saw on the Senate Wing broken

10   windows, destruction.  What else?  They saw riot police officers

11   inside the Capitol, inside the Senate Wing door, and they saw

12   dozens of people crowded in a small space.  Clearly, the

13   defendants were not authorized to be there.

14       Now, one of the defendants -- yesterday, I believe his

15   testimony was -- well, his testimony was enlightening.

16   First he said, oh, I didn't see any riot police officer until I

17   got out of the building.  Then he said, well, no, I thought the

18   alarm that I heard was no big deal because there were some

19   police officers in there, so I thought it was something going on

20   on the other side.

21       Well, it can't be both.  And it shows that that testimony was

22   not credible.  The defendants also heard what they needed to

23   hear to know they were not allowed to be there that day.

24       (Video played.)

25       That high-pitched blaring sound, that alarm sound?  None of

1    the defendants -- they each took the stand.  None of them had a
2    plausible answer for the response to that alarm.  You remember
3    that Casey Cusick's response was, well, I was just not alarmed
4    by the alarm.

5       You can bring your common sense to the deliberation room and
6    make of that what you will.  The defendants could even smell
7    that they were not supposed to be there that day.  Mr. Casey
8    Cusick shouted out to his dad ahead of him trying to march in
9    the building, "Pepper spray, Dad."  James Cusick said he didn't
10   hear that, or maybe he heard it but he doesn't remember.  Either
11   way, it makes no sense.

12      At 3:09 the defendants enter the Capitol, and there they join
13   the rest of the mob.  From there we have tracked them closely.
14   They go to the Crypt, marching south.  They keep marching south.
15   They go through the Memorial Door.  They get to the House Wing
16   Door.  There they march.  They keep going, parading around, cell
17   phone in hand.

18      Then at some point, they turn around and backtrack.  They go
19   back into the Crypt; and there they stand, and they continue
20   disrupting and preventing Congress from resuming what Congress
21   was supposed to be doing that day, from certifying the results
22   of the 2020 presidential election.

23      Even after the defendants exited the building between 3:20
24   and 3:24, they exited at slightly different times, if you
25   recall.  They did not leave the Capitol.  Instead, they joined

 1    the mob that had formed immediately outside the Senate Wing door

 2    on the Upper West Terrace, and they stay there for an hour.  An

 3    hour is a long time to remain in a riot.

 4        And while they're there, some co-rioters shout out, "Do not

 5    back down.  Don't back down."  Why?  Why did they shout that?

 6    Well, they shout that because they see that there is a platoon

 7    of riot police officers that is forming and is going to clear

 8    out the area.  The defendants are there for that, and the

 9    defendants leave only as platoon is closing in on the area.

10        Even after that, they're not done.  They go over to the east

11    side of the Capitol.  They don't go out the north side as they

12    could have.  They go over to the east side.  We last see them at

13    4:36 on the paved plaza on the east side of the Capitol.

14        What the defendants do the following day also tells you what

15    their state of mind was about January 6 and the riot that

16    happened on the Capitol.  The defendant did not -- they were not

17    done.  They came back.  They came back.  They said they were

18    just going to the Supreme Court.  So they were just driving by,

19    so they just took a video of Congress looking like a fortress,

20    with eight-foot fencing that was put up overnight.

21        Well, no.  That was not just a drive-by.  That was not just

22    a visit to the Supreme Court.  You can bring your common sense,

23    and you should bring your common sense, to the deliberation room.

24    That was them coming back to the scene of the crime because they

25    were proud --

1          MR. ROOTS:  We object to that.  Absolute

2     mischaracterization.

3          THE COURT:  I don't think the evidence has been

4     mischaracterized.  The objection is overruled.

5          MR. VALENTINI:  For their action on January 6, the

6     defendants now face four counts.  The government [sic] will

7     give you the official instructions.  Listen to them carefully.

8     But let me give you a quick overview, a road map of how you

9     can apply the facts that you've heard over the last few days

10    that you receive from the Court.

11         Count 1 charges all three defendants with entering or --

12    "or," not "and" -- or remaining in restricted area.  To find

13    any of the defendants guilty of that count, you must find that

14    any of the defendants entered or remained in a restricted

15    building or ground without lawful authority to do so.

16         Now, the two operative words there are "restricted

17    building," and that boils down to two things, as the Court's

18    instruction will tell you.

19         First, the area must be restricted in some way.  Certainly,

20    the Capitol building was restricted.  There's no question

21    about that.  There was a blaring alarm sound.  There were

22    broken windows.  It was clear to anybody that that was a

23    restricted area.  But so was the entire perimeter, and Captain

24    Tia Summers explained you that.

25         Second, you have to find that a Secret Service protectee

1    was on the grounds that were restricted at the relevant time,

2    and that's why you've heard from Special Agent Liz Glavey.

3    She testified that Vice President Pence was at the Capitol

4    that day and in fact stayed at that Capitol at a secure

5    location at some point because there was a riot going on,

6    because there was a riot going on that whole day.

7        To find the defendant guilty on Count 1, you also must

8    find that the defendant acted knowingly.  That means you must

9    find that the defendant knew that he was entering a restricted

10   space.

11       That is where all the evidence, all the evidence of the

12   signs, all the evidence of the people falling up the -- the

13   climbing, the scaling of the Capitol walls, falling off the

14   Capitol wall, all the evidence of the barriers, the Area

15   Closed sign, of the alarms, of the broken windows, that's

16   where it all comes in, because it shows the defendant knew

17   they were not supposed to be where they were.

18       Count 2.  Disorderly or disruptive conduct in a restricted

19   area.  To find the defendant guilty on this count, you must

20   find that the defendant engaged in disorderly or disruptive

21   conduct in or in proximity to any restricted building or grounds.

22       The defendant acted knowingly and with the intent to impede

23   or disrupt the orderly conduct of government business or

24   official function.  That could be either Congress's proceeding

25   or the Capitol Police doing its job.

1    The defendant's conduct must also occur when, or so that,

2    the conduct in fact impedes or disrupt the government's

3    function.  Here's the point I want to make about this

4    particular count.  First, the conduct.  You have to find that

5    the conduct is either disorderly or disruptive.  You can find

6    both, but you only need to find one.

7    Now, as to disorderly conduct, the Court will instruct

8    you that that means, as a legal matter, includes any conduct

9    of interfering with another person by unnecessarily crowding

10    that person.  And joining a riot inside the government

11    building unnecessarily crowded the Capitol Police that was

12    in charge of clearing that building.

13    Now, disruptive conduct, it includes -- and as for

14    crowding, you will also remember Officer Cartwright.  He was

15    asked how about those rioters -- you were trying to get on

16    the north side of the building where he entered with the two

17    teammates and get over to the Lower West Terrace where he was

18    reporting.  And he said, are those people in the way?  Yeah.

19    They're in the way.  And that's just, again, common sense.

20    You can also find in the alternative -- again, you only

21    need one -- disruptive conduct, and that includes any

22    disturbance that interrupts an event, activity, or normal

23    course of a process.  Again, walking into the Capitol when one

24    sees dozens of people and riot police and joining that riot,

25    that means participating in a disturbance and committing a

1    disturbance that interrupts an event, activity, or the normal

2    course of process.

3        Now, Count 3.  This is another disorderly or disruptive

4    conduct charge.  This one is a little different.  This one

5    requires you to find that the disruptive conduct actually

6    happened in a United States Capitol building.  Well, that

7    one is easy.  The others ones are easy, too, but this one is

8    particularly easy.

9        You also have to find that the defendant again acted with

10    the same intent.  And one of the differences here is that you

11    have to find that the defendant acted willfully, and willfully

12    just means that you have to find that the defendants acted

13    with intent to disregard the law.  Again, that's easy.  You

14    just have to infer from the facts that you have seen what

15    happened, what their mental state was, what they knew, what

16    they intended to do.

17        And finally, in Count 4 the defendants are charged with

18    parading, demonstrating, or picketing in a capitol building.

19    The Court will instruct you that to find the defendant guilty,

20    any of the defendants guilty, on this count, you have to find

21    that that defendant paraded, demonstrated, or picketed in any

22    United States Capitol building.

23        You have to find that the defendant acted, again, willfully

24    and knowingly.  We already talked about willfully/knowingly

25    just means they knew what they were doing.  And so let's talk

1    about the other operating terms here, and let's talk about

2    demonstrating and parading.

3        Parading, you saw it.  You saw the video.  You saw them

4    parading around from one end of the Capitol on the Senate Wing

5    door to the House Wing door, through the Crypt, back to the

6    Crypt, and then joining that disturbance in the Crypt.

7        But you will also be instructed that you need only find

8    that the defendants demonstrated in a Capitol building.  And

9    demonstrating, for purposes of this case or this statute,

10   includes any conduct that would disrupt the orderly business

11   of Congress.

12       Again, this is the same question as before:  Does joining

13   a riot inside the Capitol constitute conduct that disrupts the

14   orderly business of Congress when Congress is supposed to

15   certify the results of a presidential election?  That is the

16   question for you.

17       Now I want to spend the last few minutes with you at this

18   podium talking about what I think you're going to hear when my

19   colleague on the other side is going to stand at this podium.

20   I think you're going to hear more theories why these particular

21   defendants did not know they were not supposed to be where

22   they were.

23       But in order to accept that theory, you will have to

24   believe that they did not see any torn-down barriers, any

25   torn-down or any Area Closed signs.  You will have to believe

that they saw nothing untoward with finding Congress's windows smashed out.  You would have to find that they found nothing wrong with the chaotic -- their words -- Senate Wing door lobby packed with rioters.

You have to find there was nothing wrong with hearing a high-pitched alarm when entering Congress.  You will have to find they found nothing wrong with entering into Congress without screening, even if, within the prior 24 hours, they were screened twice — once to board a plane, the other time to attend an open-air rally.  This is Congress we're talking about.

You also have to find there was nothing wrong with the line of riot police officers in hard gear, visors down, no matter what they said about those visors, in the Senate Wing lobby. You will basically have to believe that these three individuals who are adults, with family, work, and other responsibilities, found themselves in the midst of a riot and just did not notice.

The other thing I think you're going to hear when defense counsel takes this podium is that their conduct was not really destructive because they were just walking around and milling around; and milling around is not disruptive, and walking around is not disruptive.  But remember this:  While walking around is not itself a crime, deliberately joining a stampede is a crime, and so is breaching the Capitol building to join a riot unfolding before their eyes.  It is that simple.

1        Ladies and gentlemen, thank you for your attention this

2    week.  You will hear next from the defense, and then my

3    co-counsel, Sonia Murphy, will have a chance to make some

4    final comments.  Thank you.

5            THE COURT:  Mr. Roots.

6                    DEFENSE CLOSING ARGUMENT

7        MR. ROOTS:  Thank you, ladies and gentlemen of the

8    jury.  These three men, David Lesperance, James Cusick, and

9    Casey Cusick, are not guilty of the federal crimes that they

10    are charged with.  In fact, we shouldn't even be here today.

11    The government has completely, totally, and utterly failed

12    to put on any evidence that these three men broke the laws at

13    issue in this trial.

14        Now, we can quibble.  We can argue about people doing

15    things on January 6, why they came to D.C., who they supported,

16    who they didn't support, whether their sentiments about the

17    2020 election were proper or valid or invalid.  We can talk

18    about all those things, but none of those things are really

19    even relevant.  They really don't even matter to this trial.

20        You can always tell which side is hiding the ball by

21    the way they present their case.  We literally saw federal

22    prosecutors put on a picture of a sign and sneak it into the

23    evidence in this case where their own witness couldn't answer

24    where the picture was taken or when.  This picture could have

25    been taken last week at the Rayburn Office Building.  Could

1    have been taken at the other side of the parking lot out here

2    in 1983.

3        They put on another picture of some guy leaning against a

4    stone wall somewhere with an Area Closed sign in front of him.

5    These three defendants never saw that guy.  They never saw

6    that sign.  They never even saw that particular vantage point.

7    Their own witness, the government's own witness, Captain

8    Summers, took the stand and admitted that that picture was

9    taken earlier in the day.

10       In this case, there is simply no question that these three

11   gentlemen — David Lesperance, James Cusick, and Casey Cusick —

12   walked unobstructed onto the Capitol grounds where thousands

13   of others had already walked unobstructed.  The most the

14   government could put on was a Capitol Police captain who had

15   said that earlier in the day there had been some signs posted.

16   Earlier in the day there were some barricades.  Earlier in the

17   day there had been some cops posted down on the Capitol grounds.

18       We know from the evidence that none of those things were

19   in place at the time that Casey Cusick, Jim Cusick, and David

20   Lesperance arrived later in the afternoon.  How do we know

21   this?  Because the government put on David Lesperance's own

22   videos, David Lesperance's own cell-phone videos that he

23   himself was filming as he walked and as all three of them

24   walked onto the Capitol grounds.  That evidence shows none of

25   those signs or barricades were in their way.  None of those

1    signs or barricades were visible to them.  We also know --

2              MR. VALENTINI:  Objection.

3              THE COURT:  I'm sorry?  What?

4              MR. VALENTINI:  Withdrawn.

5              MR. ROOTS:  We also know from Dave Sumrall's videos,

6    which were taken almost an hour earlier, even at that time, an

7    hour earlier, when Dave Sumrall passed onto the Capitol grounds,

8    there were no barricades in his place.

9        And even Dave Sumrall testified that he thought the scene

10   was like a rock concert where the crowd in front of him had

11   been waiting and then was given permission or a signal of some

12   kind or had negotiated a situation where they were then

13   allowed to go onto the Capitol grounds.  And remember, that

14   was about an hour before these three men got there.

15       Think about how preposterous the government's claims are.

16   Their first witness, you might call her the star witness, was

17   Captain Summers of the police department.  Nice person, I'm

18   sure, but she testified that signs were at one point posted

19   every fight feet.  Do you recall that?  But they struggled to

20   find a single image of signs five feet apart.

21       This is the federal government, the U.S. Department of

22   Justice.  Couldn't produce a sign in the foregrounds.  None

23   of the pictures showed such a thing in the foregrounds.  I

24   think there was one picture where, off in the distance, maybe

25   200 yards away, there were white specks that they said were

1    signs that no one could see, they might have been distributed

2    five feet apart.  But none of the pictures showed any signs

3    five feet apart in the foreground, and this is the government's

4    best evidence.

5        In fact, every picture they showed of the signs in the

6    foreground -- and remember, those were shown at times way

7    before these guys got there -- showed there was no such thing

8    as signs every fight feet.  And remember, those pictures are

9    nothing like what Mr. Lesperance, Mr. Cusick, and Casey Cusick

10   saw.  They saw no signs, passed through no barricades, jumped

11   through no bike racks, tore down no fencing, heard no

12   announcement, and saw no law enforcement officers in the

13   Capitol grounds.

14       Casey Cusick said that they actually hung around and

15   watched people walk in and out of the Capitol without any

16   reports of any restrictions inside.  So they walked into the

17   Capitol without restrictions.  There were no cops in front of

18   the door and none directly inside the door.  In fact, these

19   guys didn't even open a door, because it was already open.

20       Inside they saw police officers for the first time.  A

21   few officers -- well, I guess there were a couple out on the

22   grounds, but none of which were providing any barrier or any

23   opposition.  A few officers were positioned at a hallway area

24   in the hallway to their left.  The testimony that all three of

25   these men gave is quite consistent with the video evidence

1    that we've seen.  The officers were not holding their arms out

2    or telling people to leave.

3        In fact, they were fist-bumping the crowd.  The crowd was

4    fist-bumping them, and the officers were fist-bumping the

5    crowd.  And by the way, the government's own image that they

6    put on just now shows Mr. James Cusick looking over in that

7    direction and seeing the crowd fist-bump police officers and

8    police officers fist-bump back.

9        These three gentlemen walked peacefully down a hallway to

10   their right, they milled around, went to check on a restroom,

11   which was packed.  They ultimately left.

12       Let me just say, the government just used a term, "riot."

13   There was no riot at the time that these gentlemen were inside

14   the Capitol.  That was not a riot, and I challenge all of you

15   to think about what you know about riots that you've seen in

16   your life, news footage of riots.  They didn't see anyone

17   jumping around.  No one was lighting fires to anything.  No

18   one was turning over furniture.  They didn't see any of that.

19       At no time did these men see any posted signs in front of

20   them saying the area was closed.  The government has put on a

21   couple of images of signs at the side in one place.  This is

22   like a -- we discussed this with the one witness.  This is

23   like walking past a ladies' room.  If you walk past a sign

24   that says "ladies' room," are you violating the restricted

25   area?  The answer is obvious.  You are not.  As a matter of

1    fact, as a matter of law, as a matter of common sense, you

2    are not violating a restricted area.

3        So now let's look at the specific charges that the

4    government needs to prove.  Each of these elements needed to

5    be proven beyond a reasonable doubt.  And remember, that's the

6    highest standard in the law, beyond a reasonable doubt.  They

7    failed to prove any of it.

8        Let's go into the elements of Count 1.  Count 1 requires

9    both that it is in fact a restricted area and that these

10   defendants knew it was a restricted area, and the government

11   failed to prove either of those elements beyond a reasonable

12   doubt.

13       All of us are aware of events such as celebrations,

14   soccer games, football games.  It happens every week in

15   America, a celebration where the crowd runs onto the field.

16   You know, it can probably be said that the first 10 or 15 guys

17   on the field who run in from the audience probably know that

18   they're doing something wrong.  But what about the second

19   hundredth person or the 500th person to walk onto the field?

20   Obviously, they don't know they're doing anything wrong.

21       In fact I believe, even further, the referees of those

22   events, in our case the police, the authorities recognize

23   that it's a particular moment, that it's a time when in fact

24   -- I think the evidence came in they felt outnumbered.  It

25   was a situation where it actually, in law, as a matter of

1    fact, became unrestricted because the officers, the

2    authorities, the umpires on the football field realized,

3    hey, they relinquish the authority for that moment.

4       It's like an easement on property.  If you allow people

5    on your property, hundreds of thousands of people to walk

6    across, after a while it's not your property, or at least from

7    that moment in time.  So they failed to show beyond a

8    reasonable doubt any of the elements required for Count 1,

9    and these gentlemen are not guilty of Count 1.

10       Let's go to Count 2, disorderly conduct inside a restricted

11    area.  I submit that if you look at the definition "disorderly

12    conduct," the government is actually trying to claim that just

13    being in a place can be four crimes at the same time.  Standing

14    or walking, gently or peacefully, can be disorderly conduct.

15       I want you to ask yourself: Do you want to impose that

16    standard on the American people, that merely standing in a

17    place or walking peacefully in an area constitutes the crime

18    of disorderly conduct?  Do you want to impose that on the

19    American people?  I submit that that is a preposterous

20    standard.  The government has failed to show disorderly

21    conduct, and these men are not guilty of Count 2.

22       Let's go to Count 3, which is a little bit similar,

23    disorderly conduct in a capitol building.  Very similar.

24    Again, standing or walking.  All the evidence is on the side

25    of the defense.  None of the evidence is on the side of the

1    prosecution.  The prosecution utterly and completely and

2    totally failed to show disorderly conduct in a capitol

3    building.

4        These men didn't jump up and down.  They didn't run.

5    They didn't kick anything.  They didn't throw or toss anything.

6    They didn't bump into a trash can.  They didn't touch anything.

7    They didn't wave a flag.  They didn't push anyone.  I think the

8    definition of disorderly conduct includes the word "jostling,"

9    pushing somebody.  They didn't even touch another person.  They

10   are not guilty of Count 3.  Absolutely not guilty of Count 3.

11       How about Count 4, picketing and parading in a U.S. Capitol?

12   Now, just think about this.  Again, how evil would it be if you

13   could convict an American of picketing and parading for merely

14   standing or walking peaceably in an area?

15       These men didn't hold up a sign.  They didn't picket.  These

16   men did not parade.  Parade means you're trying to show off to

17   others.  Parading, by any definition, means that you're doing

18   some expressive activity to be seen or something.  They didn't

19   picket or parade.  They absolutely cannot be convicted of this

20   charge.  The government has absolutely failed to meet their

21   burden of proof, and they are not guilty of Count 4 either.

22       So I ask, ladies and gentlemen of the jury, when you go back

23   to deliberate, that you carefully examine all the evidence.

24   Look at it carefully.  Slow it down.  Slow these videos down.

25   Look at what these men actually did.  Look carefully at what

1    they did.  Look at pictures.  Look at the videos put on by the

2    government.  Remember, multiple FBI agents combed through all

3    the evidence available to the United States to present the case

4    that they did.

5        Just think about that.  This really was the best evidence

6    that they could put on against these three defendants.  Think of

7    all the resources of the federal government, and this was their

8    case.  We shouldn't even be here today, folks.  None of the

9    evidence provided by the government establishes guilt on any

10   of these four federal crimes, and all of the evidence supports

11   a not guilty verdict for these defendants.

12       Mr. Lesperance took the stand and admitted that he wasn't

13   perfect on January 6.  He admitted, hey, I wasn't perfect.

14   I didn't do things perfectly.  Upon retrospect now, with all

15   the information we have, might have done it differently.

16       But thank goodness you don't need to be perfect in America.

17   Thank goodness.  There's no question, ladies and gentlemen, of

18   one of simple fact:  These three men — David Lesperance, James

19   Cusick, and Casey Cusick — are not guilty of these charges.

20   And I thank you very much.

21           THE COURT:  Ms. Murphy.

22                GOVERNMENT REBUTTAL ARGUMENT

23           MS. MURPHY:  Members of the jury, earlier this week

24   I stood before you, and I promised you that my colleague,

25   Francesco Valentini, and I would walk you step by step through

1    the defendants' illegal conduct on January 6, 2021.  Now we
2    have fulfilled our promise to you.  We have shown you, step by
3    step, through the evidence that's been presented this week,
4    exactly what the defendants did on January 6, 2021.

5    But before I tell you again what we've shown you, I want
6    to tell you what this case is not about.  This case is not a
7    condemnation of every supporter of the former president of the
8    United States, Donald Trump.  This case is not a case on all
9    things January 6, and this case is not an opportunity for us
10   to judge the actions of the United States Capitol Police.
11   They're not on trial here today.  This case is about the
12   deliberate actions of the three defendants here:  David John
13   Lesperance, Casey Cusick, and James Varnell Cusick, Jr.
14   That's what this case is about.

15   Now, all three of the defendants admitted to you that they
16   entered into a federal building, the United States Capitol,
17   because they wanted to and because other people were entering
18   the Capitol.  Casey Cusick also told you he needed to use the
19   restroom.  And I just want you to revisit that for a moment,
20   because you've heard all the testimony now.  You've seen all
21   of the evidence.  We know Casey Cusick never went to the
22   restroom, and then we know that the three defendants stayed
23   outside on the Upper West Terrace for another hour.  So just
24   hold that in mind.

25   But they told you they wanted to go inside.  They admitted

1    to you that they did go inside the federal building, the

2    United States Capitol, and they told you other people were

3    doing it.  Other people.  Rioters.

4        David Lesperance described the man who was scaling the wall

5    and someone who tried to pull a poster down as "troublemakers,"

6    and Casey Cusick and James Cusick both said to you, oh, it was

7    a mixed bag.  Some people were good; some people were bad.

8        I submit to you that a riot is much like a rainstorm or

9    hailstorm.  If you go outside right now and there's one drop

10   of rain, I doubt you'll even put up your umbrella.  But if you

11   go outside right now and the sky opens up and a thousand

12   raindrops fall on you, you'll pull out your umbrella and/or

13   you'll run back inside.

14       A riot works much the same way.  Its power is in the

15   numbers, and defendants were a part of those numbers.  They

16   told you that they were a part of those numbers.  They told

17   you, other people did it, so we did it.  They joined a mob.

18   They added fuel to the fire.  They added fuel to the riot.

19       Now, you will have an opportunity to go back and to

20   deliberate.  You will have access to all of the elements you

21   will receive in this case.  I encourage you to revisit it and

22   to look at it carefully and to consider everything, including

23   bringing your own understanding, your own common sense with

24   you.

25       And I am confident that once you've done so, and you've

1    considered the facts that you've learned, and you consider

2    all of the evidence you've reviewed, that there will be just

3    one conclusion that is reasonable, that is logical, and that

4    is consistent with all of the facts and evidence that you've

5    seen, and that is guilty on all charges for all three

6    defendants.  Thank you.

7            THE COURT:  All right.  Thank you all, Counsel.

8                       JURY INSTRUCTRUCTIONS

9            THE COURT:  Ladies and gentlemen, now is the time that

10   I will give you the instructions on the law that you must

11   follow.  This will take about, I would say, maybe 20 minutes.

12   I'm thinking that we can do this without taking a break, unless

13   anyone needs to take a break at this point?  Seeing no hands

14   go up, let's proceed.

15     So the time has now come when all the evidence is in and

16   you've heard closing arguments of the lawyers.  It is now up

17   to me to instruct you on the law that will control your

18   deliberations in this case.  My instructions will be roughly

19   divided into four parts:

20     First I'll talk to you about some general principles of

21   the law; then I will instruct you on evaluating the evidence;

22   third, I will discuss with you instructions that apply to the

23   elements of the particular offenses charged in this case; and

24   finally, I will have some closing remarks about your

25   deliberations in this matter.

1    For those of you who are taking notes, I will let you know

2    that a written copy of these instructions will be available

3    for you as you start your deliberations.

4    So let me begin with some general principles.

5    First, I'm sure you understand by now that the jury and the

6    court, you and I, have different responsibilities in a trial.

7    My function is to conduct this trial in an orderly, fair, and

8    efficient manner, to rule on questions of law, and to instruct

9    you on the law that applies in this case.  It is your duty to

10   accept the law as I state it to you.  You should consider all

11   the instructions as a whole.  You may not ignore or refuse to

12   follow any of them.

13   Your function as the jury is to determine what the facts

14   are in this case.  You are the sole judges of the facts.

15   While it is my responsibility to decide what is admitted as

16   evidence during the trial, you alone decide what weight, if

17   any, to give to that evidence.  You alone decide the

18   credibility or believability of the witnesses.  You should

19   determine the facts without prejudice, fear, sympathy, or

20   favoritism.  You should not be improperly influenced by

21   anyone's race, ethnic origin, or gender.  Decide the case

22   solely from a fair consideration of the evidence.

23   You may not take anything I may have said or done as

24   indicating how I think you should decide this case.  If you

25   believe that I have expressed or indicated any such opinion,

you should ignore it.  The verdict in this case is your sole
and exclusive responsibility.  If any reference by me or the
attorneys to the evidence is different from your memory of the
evidence, it is your recollection that should control during
your deliberations.

And during those deliberations, you may consider only the
evidence properly admitted in this trial.  The evidence in
this case was the sworn testimony of the witnesses and the
exhibits which were admitted into evidence.  When you consider
the evidence, you are permitted to draw from the facts which
you find have been proven such reasonable inferences as you
feel are justified in the light of your experience.

Statements and arguments of the lawyers are not evidence.
They are only intended to assist you in understanding the
evidence.  Similarly, the questions of the lawyers are not
evidence.

The criminal information in this case is merely the formal
way of accusing a person of a crime.  You must not consider
the information as evidence of any kind.  You may not consider
it as any evidence of any of the defendants' guilt or draw any
inference of guilt from it.

The lawyers in this case sometimes objected when the other
side asked a question, made an argument, or offered evidence
that the objecting lawyer believed was not proper.  You must
not hold such objections against the lawyer who made them or

1    the party that he or she represents.  It is the lawyers'

2    responsibility to object to evidence that they believe is not

3    admissible.

4        If, during the course of a trial, I sustained an objection

5    to a lawyer's question, you should ignore the question, and

6    you must not speculate as to what the answer would have been.

7    If, after a witness answered a question, I ruled that the

8    answer should be stricken, you should ignore both the question

9    and the answer, and they should play no part in your

10   deliberations.  Likewise, exhibits to which I have sustained

11   an objection or I ordered stricken are not evidence, and you

12   must not consider them in your deliberations.

13       Every defendant in a criminal case is presumed to be

14   innocent.  This presumption of innocence remains with each

15   defendant throughout the trial unless and until the government

16   has proven he is guilty beyond a reasonable doubt.  This

17   burden never shifts throughout the trial.  The law does not

18   require the defendants to prove their innocence or to produce

19   any evidence at all.

20       If you find that the government has proven beyond a

21   reasonable doubt every element of a particular offense with

22   which one of the defendants is charged, it is your duty to

23   find that defendant guilty of that offense.  On the other hand,

24   if you find the government has failed to prove any element of

25   a particular offense beyond a reasonable doubt as to one of the

1    defendants, it is your duty to find that defendant not guilty

2    of that offense.

3        The government has the burden of proving a defendant guilty

4    beyond a reasonable doubt as to each count or charge against

5    him.  Some of you may have served as jurors in civil cases

6    where you were told it is only necessary to prove that a fact

7    is more likely true than not true, which we call the

8    "preponderance of the evidence."

9        In criminal cases, the government's proof must be more

10   powerful than that.  It must be "beyond a reasonable doubt."

11   Reasonable doubt is the kind of doubt that would cause a

12   reasonable person, after careful and thoughtful reflection,

13   to hesitate or act in the graver or more important matters

14   in life.

15       However, it is not an imaginary doubt, nor a doubt based

16   on speculation or guesswork.  It is a doubt based on reason.

17   The government is not required to prove guilt beyond all doubt

18   or to a mathematical or scientific certainty.  Its burden is

19   to prove guilt beyond a reasonable doubt.

20       Proof beyond a reasonable doubt is proof that leaves you

21   firmly convinced of a defendant's guilt.  There are very few

22   things in the world that we know with absolute certainty, and

23   in criminal cases the law does not require proof that overcomes

24   every possible doubt.  If, based on your consideration of the

25   evidence, you are firmly convinced that one of the defendants

is guilty of a crime charged, you must find him guilty.  If, on the other hand, you think there is a real possibility that a defendant is not guilty, you must give him the benefit of the doubt and find him not guilty.

There are two types of evidence from which you may determine what the facts are in this case: direct evidence and circumstantial evidence.  When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence.  On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example:  If a person looked out a window and saw snow was falling, he would be an eyewitness to the fact that snow was falling.  If he later testified in court that he had seen snow falling, his testimony would be direct evidence of the fact that snow was falling at the time he saw it happen.

However, if he looked out a window and saw no snow on the ground and then went to sleep and saw snow on the ground after he woke up, it would be a reasonable inference that it had snowed while he was asleep.  His testimony about those observations would be circumstantial evidence that it had snowed.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact.  The law does not

favor one form of evidence over another.  It is for you to
decide how much weight to give to any particular evidence,
whether it be direct or circumstantial.  You are permitted to
give equal weight to both.  Circumstantial evidence does not
require a greater degree of certainty than direct evidence.
In reaching a verdict in this case, you should consider all
the evidence presented, both direct and circumstantial.

   In determining whether the government has established the
charges of each defendant beyond a reasonable doubt, you must
consider and weigh the testimony of all the witnesses who have
appeared before you.  You are the sole judges of the
credibility of the witnesses.  In other words, you alone are
to determine whether to believe any witness and the extent to
which any witness should be believed.

   In reaching a conclusion as to the credibility of any
witness, you may consider any matter that may have a bearing
on the subject.  You may consider the demeanor and the
behavior of the witness on the witness stand, the witness's
manner of testifying, whether the witness impresses you as a
truthful person, whether the witness impresses you as having
an accurate memory and recollection, whether the witness has
any motive for not telling the truth, whether the witness had
a full opportunity to observe the matters about which he or
she has testified, whether the witness has any interest in the
outcome of this case or friendship or hostility toward other

1    people concerned with the case.

2        Inconsistencies or discrepancies in the testimony of a

3    witness, or between the testimony of difference witnesses, may

4    or may not cause you to discredit such testimony.  Two or more

5    persons witnessing an incident or transaction may see or hear

6    it differently.  An innocent misrecollection, like a failure

7    of recollection, is not an uncommon experience.

8        In weighing the effect of the inconsistency or discrepancy,

9    always consider whether it pertains to a matter of important

10   or unimportant detail and whether the inconsistency or

11   discrepancy results from innocent error or intentional

12   falsehood.

13       You may consider the reasonableness or unreasonableness,

14   the probability or improbability of the testimony of a witness

15   in determining whether to accept it as true and accurate.

16   You may consider whether the witness has been contradicted or

17   supported by other credible evidence.

18       If you believe that any witness has shown him or herself

19   to be biased or prejudiced for or against either side in this

20   trial, you may consider and determine whether such bias and

21   prejudice has colored the testimony of a witness so as to

22   affect the desire and capability of that witness to tell the

23   truth.  You should give the testimony of each witness such

24   weight as in your judgment it is fairly entitled to receive.

25       The weight of the evidence is not necessarily determined by

the number of witnesses testifying for each side.  Rather, you
should consider all the facts and circumstances in evidence to
determine which of the witnesses you believe.  You may find
that the testimony of a smaller number of witnesses on one
side is more believable than the testimony of a greater number
of witnesses on the other side, or you might find the opposite.

A law enforcement officer's testimony should be evaluated
by you just as any other evidence in the case.  In evaluating
the officer's credibility, you should use the same guidelines
that you apply to the testimony of any witness.  In no event
should you give either greater or lesser weight to the testimony
of any witness merely because he or she is a law enforcement
officer.

A defendant has a right to become a witness on his own
behalf.  His testimony should not be disbelieved merely
because he is a defendant.  In evaluating his testimony,
however, you may consider the fact that the defendant has an
interest in the outcome of this trial.  As with the testimony
of any other witness, you should give the defendant's
testimony such weight as in your judgment it deserves.

You have heard evidence that one or more of the defendants
made statements to law enforcement about the crimes charged.
You should consider all the circumstances in deciding whether
the defendant made those statements.  If you find that the
defendant made one or more of those statements, you must

1    decide how much weight to give the statements.

2        For example, you may consider whether the defendant made

3    the statements voluntarily and understood what he was saying.

4    You may consider whether he was forced, threatened, or

5    pressured, either physically or psychologically, and whether

6    he was promised any reward or benefit for making the

7    statements.

8        You may consider all of the conversations between the

9    defendant and law enforcement officers.  You may consider

10    whether the officers warned the defendant of his rights.

11    You may consider where and when the statements were given,

12    the duration of any questioning, who was present during some

13    or all of the questioning of a defendant, and whether the

14    officers recorded some or all of the conversations.  You may

15    consider the age, education, experience, intelligence, and

16    the physical and mental condition of the defendant who made

17    the statements.

18        During the trial you have heard evidence of certain

19    statements made by Defendant David John Lesperance before

20    trial to law enforcement.  Those statements made by

21    Mr. Lesperance were admitted only with respect to him, and

22    they were not admitted against the other two defendants.

23    You may consider evidence of those statements made before trial

24    only with respect to Mr. Lesperance.  You must not consider them

25    in any way in your deliberations with respect to Mr. Casey

1    Cusick or Mr. James Cusick, Jr.

2       One of the questions you were asked when we were selecting

3    this jury was whether the nature of the charges would affect

4    your ability to reach a fair and impartial verdict.  We asked

5    you that question because you must not allow the nature of a

6    charge to affect your verdict.  You must consider only the

7    evidence that has been presented in this case in reaching a fair

8    and impartial verdict.

9       You may have heard testimony about witnesses meeting with

10   attorneys or investigators before they testified.  You are

11   instructed that it is perfectly proper for a lawyer or

12   investigator to interview a witness in preparation for trial.

13      Now with respect to the charges.  I'm now going to instruct

14   you on the specific offenses charged in the information.  The

15   information in this case contains four counts, each of which

16   is charged against each defendant:

17      No. 1.  Entering and Remaining in a Restricted Building or

18   Grounds.

19      No. 2.  Disorderly and Disruptive Conduct in a Restricted

20   Building or Grounds.

21      No. 3.  Disorderly and Disruptive Conduct in a Capitol

22   Building.

23      No. 4.  Parading, Demonstrating, or Picketing in a Capitol

24   Building.

25      Count 1 of the information charges each of the defendants

of entering and remaining in a restricted building or grounds.
In order to find one or more of the defendants guilty on this
ground, you must find that the government proved each of the
following elements beyond a reasonable doubt: first, that the
defendant entered or remained in a restricted building or
grounds without lawful authority to do so; and second, that the
defendant did so knowingly, meaning he knew that the building or
grounds was restricted, and he knew he lacked lawful authority
to enter or remain there.

A few definitions.  The term "restricted building or grounds"
means any posted, cordoned-off, or otherwise restricted area of
a building or grounds where a person protected by the Secret
Service is temporarily visiting.  A restricted area does not
need to be established by the Secret Service specifically to
qualify as a restricted building or grounds.

The term "person protected by the Secret Service" includes the
vice president and the immediate family of the vice president.

A person acts "knowingly" if he realizes what he is doing and
is aware of the nature of his conduct and does not act through
ignorance, mistake, or accident.  In deciding whether a
defendant acted knowingly, you may consider all of the evidence
including what he did or said.

Count 2 of the information charges each defendant with
disorderly and disruptive conduct in a restricted building or
grounds.  In order to find one of the defendants guilty of this

1    offense, you must find that the government proved each of

2    the following elements beyond a reasonable doubt:

3        first, the defendant engaged in disorderly or disruptive

4    conduct in, or in proximity to, any restricted building or

5    grounds; second, the defendant did so knowingly and with the

6    intent to impede or disrupt the orderly conduct of government

7    business or official functions; third, the defendant's conduct

8    occurred when, or so that, his conduct in fact impeded or

9    disrupted the orderly conduct of government business or official

10   functions.

11       Some definitions:  "Disorderly conduct" occurs when a person

12   is unreasonably loud and disruptive under the circumstances or

13   interferes with another person by jostling against or

14   unnecessarily crowding that person.  "Disruptive conduct" is a

15   disturbance that interrupts an event, activity, or the normal

16   course of a process.  The term "restricted building or grounds"

17   has the same meaning as in the instructions that I gave for

18   Count 1, and the term "knowingly" has the same meaning as in the

19   instructions for Count 1.

20       Count 3 of the information charges each defendant with

21   disorderly and disruptive conduct in a Capitol building.  In

22   order to find one of the defendants guilty of this offense,

23   you must find that the government proved each of the following

24   elements beyond a reasonable doubt:

25       First, that the defendant engaged in disorderly or disruptive

conduct in any United States Capitol building; second, that the
defendant did so with the intent to impede, disrupt, or disturb
the orderly conduct of a session of Congress or either house of
Congress; and third, that the defendant acted willfully and
knowingly.

The term "United States Capitol building" includes the
United States Capitol located at First Street Southeast in
Washington, D.C.  The term "disorderly or disruptive conduct"
has the same meaning as in the instructions for Count 2 defining
"disorderly conduct" and "disruptive conduct."

A person acts "willfully" if he attempts to do something
that the law forbids, that is, to disobey or disregard the law.
An act is not done willfully if it is done as a result of
mistake, carelessness, lack of an evil purpose or motive, or
some other innocent reason.  Willfully does not, however,
require proof that the defendant was aware of the specific rule
or law that his conduct may be violating.  The term "knowingly"
has the same meaning as in the instructions that I gave you for
Count 1.

Count 4 of the information charges each defendant with
parading, demonstrating, or picketing in a capitol building.
In order to find one of the defendants guilty of this offense,
you must find that the government proved each of the following
elements beyond a reasonable doubt: first, that the defendant
paraded, demonstrated, or picketed in any United States Capitol

building; and second, that the defendant acted willfully and
knowingly.

The terms "parade" and "picket" have their ordinary meanings.
The term "demonstrate" has its ordinary meaning and includes
conduct that would disrupt the orderly business of Congress.
The term "United States Capitol building" has the same meaning
as in the instructions I gave for Count 3.  The term "knowingly"
has the same meaning as in the instructions for Count 1.  The
term "willfully" has the same meaning as in the instructions
for Count 3.

You are here to decide whether the government has proved
beyond a reasonable doubt that each defendant is guilty of the
offenses charged.  The defendants are not on trial for any act,
conduct, or offense not charged in the information.

It is not up to you to decide whether anyone other than the
defendants should be prosecuted for any of the offenses charged.
The fact that another person also may be guilty is no defense to
a criminal charge.  The question of the possible guilt of others
should not enter your thinking as you decide whether each of
these defendants has been proven guilty of the offenses charged.

Each count of the information charges a separate offense.
Moreover, each defendant is entitled to have the issue of his
guilt as to each of the crimes for which he is on trial
determined from his own conduct and from the evidence that
applies to him as if he were being tried alone.  You should,

1    therefore, consider separately each offense and the evidence

2    which applies to it, and you should return separate verdicts

3    as to each count of the criminal information as well as to

4    each defendant.

5        The fact that you may find any one defendant guilty or not

6    guilty on any one count of the information should not influence

7    your verdict with respect to any other count of the information

8    for that defendant, nor should it influence your verdict with

9    respect to any other defendant as to that count or any other

10   count in the information.

11       Thus, you may find any one or more of the defendants guilty

12   or not guilty on any one or more counts of the information, and

13   you may return different verdicts as to different defendants and

14   as to different counts.

15       Someone's intent or knowledge ordinarily cannot be proved

16   directly, because there is no way of knowing what a person is

17   actually thinking, but you may infer someone's intent or

18   knowledge from the surrounding circumstances.  You may consider

19   any statement made or acts done or omitted by a defendant and

20   all other facts and circumstances received in evidence which

21   indicate the defendant's intent or knowledge.  You may infer,

22   but are not required to infer, that a person intends the natural

23   and probable consequence of acts they intentionally did or did

24   not do.

25       It is entirely up to you, however, to decide what facts to

find from the evidence received during this trial.  You should

consider all of the circumstances in evidence that you think are

relevant in determining whether the government has proved beyond

a reasonable doubt that each defendant acted with the necessary

state of mind.

While a defendant must act with the requisite intent for

each charged crime, this need not be the defendant's sole

purpose.  A defendant's unlawful purpose is not negated by the

simultaneous presence of another purpose for the defendant's

conduct.

Now a few closing remarks.  When you return to the jury room,

you should first select a foreperson to preside over your

deliberations and to be your spokesperson here in court,

although there's not much that's required in court.  There are

no specific rules regarding how you should select a foreperson.

That's up to you.

However, as you go about the task, be mindful of your

mission: to reach a fair and just verdict based on the evidence.

Consider selecting a foreperson who will be able to facilitate

your discussions, who will help you organize the evidence, who

will encourage civility and respect among all of you, who will

invite each juror to speak up regarding his or her views about

the evidence, and who will promote a full and fair consideration

of that evidence.

The verdict must represent the considered judgment of each

1    juror, and in order to return a verdict, each juror must agree

2    to that verdict.  In other words, your verdict on each count

3    must be unanimous.

4        During the course of the trial, a number of exhibits were

5    admitted into evidence.  Sometimes only portions of an exhibit

6    were admitted, such as portions of a longer video, a document

7    with some words or pictures blacked-out or otherwise removed,

8    or a video played without audio.

9        There are a variety of reasons why only a portion of an

10   exhibit is admitted, including that the other portions are

11   inadmissible or implicate an individual's privacy.  Thus, as you

12   examine the exhibits and you see or hear a statement where there

13   appear to be omissions, you should consider only portions that

14   were admitted.  You should not guess as to what has been taken

15   out.

16       I will be sending into the jury room with you the exhibits

17   that have been admitted into evidence.  You may examine any or

18   all of them as you consider your verdicts.  Please keep in mind

19   that exhibits that were only marked for identification but were

20   not admitted into evidence will not be given to you to examine

21   or consider in reaching your verdict.

22       You will not have any transcripts or summaries of the

23   testimony available to you during your deliberations.  You

24   will have to rely entirely on your memory and your notes of

25   witnesses' testimony.

1    The question of possible punishment of the defendants in the

2    event of a conviction is not a concern of yours and should not

3    enter into or influence your deliberations in any way.  The duty

4    of imposing sentence in the event of conviction rests exclusively

5    with me.  Your verdict should be based solely on the evidence in

6    the case, and you should not consider the matter of punishment

7    at all.

8    If it becomes necessary during your deliberations to

9    communicate with me, you may send a note by the clerk or the

10   marshal, signed by your foreperson or by one or more members of

11   the jury.  No member of the jury should try to communicate with

12   me except by such a signed note, and I will never communicate

13   with any member of the jury on any matter concerning the merits

14   of this case except in writing or orally here in open court.

15   Bear in mind that you are never, under any circumstances, to

16   reveal to any person — not to the clerk, to the marshal, or to

17   me — how jurors are voting until after you have reached a

18   unanimous verdict.  This means that you should never tell me in

19   writing or in open court how the jury is divided on any matter.

20   This means, for example, that you should never tell me that

21   the jury is divided 6 to 6, for example, or 7 to 5, or 11 to 1,

22   whether the vote is for conviction or acquittal as to any

23   defendant or in any other issue in this case.

24   I will provide you with a copy of my instructions.

25   During your deliberations, you may, if you want, refer to these

1    instructions.  While you may refer to any particular portion

2    of the instructions, you are to consider the instructions as a

3    whole, and you may not follow some and ignore others.  If you

4    have any questions about the instructions, you should feel free

5    to send me a note.  Please return the instructions to me when

6    your verdict is rendered.

7        During the trial I have permitted those jurors who wanted to

8    do so to take notes.  You may take your notes to the jury room

9    and use them during your deliberations if you wish.

10       As I told you at the beginning of the trial, your notes are

11   only to be an aid to your memory.  They are not evidence in the

12   case, and they should not replace your own memory of the

13   evidence.  Those jurors who have not taken notes should rely on

14   their own memory of the evidence.  The notes are intended for

15   the notetaker's own personal use.

16       At the end of your deliberations, the deputy clerk will

17   collect your notebooks and pencils when you return to the

18   courtroom.  We will destroy your notebooks immediately after

19   the trial.  No one, including myself, will look at them.

20       You will be provided with three verdict forms for your use

21   when you have concluded your deliberations.  The forms are not

22   evidence in the case, and nothing in them should be taken to

23   suggest or infer by me what your verdict should be.  Nothing in

24   the forms replaces the instructions of law that I have already

25   given you, and nothing in them replaces or modifies the

1    instructions about the essential elements which the government

2    must prove beyond a reasonable doubt.  The forms are just meant

3    to assist you in recording your verdicts.

4        The forms have some space for entries of your verdict on each

5    count charged as to each defendant.  You should record your

6    verdict on the forms only after you have reached a unanimous

7    verdict.  They should then be signed and dated by the foreperson.

8        The attitude and conduct of the jurors at the beginning of

9    the deliberations are matters of considerable importance.  It

10   may not be useful for a juror, upon entering the jury room, to

11   voice a strong expression of an opinion of the case or to

12   announce a determination to stand for a certain verdict.  When

13   one does that at the outset, a sense of pride may cause one

14   juror to hesitate to back away from an announced position after

15   a discussion of the case.

16       Furthermore, many jurors find it useful to avoid an initial

17   vote upon retiring to the jury room.  Calmly reviewing and

18   discussing the case at the beginning of the deliberations is

19   often a more useful way to proceed.  Remember that you are not

20   partisans or advocates on this matter, but you are judges of

21   the facts.

22       As I've instructed you previously, in some cases, though not

23   necessarily in this one, there may be reports in the newspaper

24   or radio, television or internet concerning the case while

25   deliberations are going on.  If there should be such  media

1    coverage in the case, you may be tempted to read, listen to,

2    or watch it.  You must not listen to or read such reports or

3    watch them, and you must decide this case solely on the evidence

4    presented in the courtroom.  This includes any electronic

5    communications such as email or text or any blogging about

6    the case.

7        In addition, you may not conduct any independent investigation

8    during deliberations.  This means you may not conduct any

9    research, in person or electronically, via the internet or in

10   any other way.  You must consider only evidence that meets

11   certain standards in reaching your verdict.

12       For example, witnesses must be sworn to tell the truth and

13   must be subject to cross-examination.  News reports about the

14   case are not subject to these standards, and if you read, listen

15   to, or watch these reports, you may be exposed to misleading or

16   inaccurate information that unduly favors one side of the case

17   and to which the other side is unable to respond.

18       Therefore, you must completely disregard any press,

19   television, radio, or internet reports that you may read, see,

20   or hear.  Such reports are not evidence, and you should not be

21   influenced in any manner whatever by such publicity.

22       If any publicity about this trial inadvertently comes to your

23   attention during your deliberations, please do not discuss it

24   with other jurors or anyone else.  Just let me or the clerk or

25   marshal know as soon after it happens as you can.  I will then

1    briefly discuss it with you to make sure it does not present

2    any problems.  In fairness to both sides, it is essential that

3    you comply with these instruction.

4        Now, the last thing I must do before you begin your

5    deliberations is a sad thing, actually, and that is to excuse

6    the alternate jurors.  As I told you before, the selection of

7    alternates was an entirely random process.  It's nothing

8    personal.  We selected two seats to be the alternate seats

9    before any of you entered the courtroom.

10       Since the rest of you have remained healthy and attentive,

11   I now am going to excuse the two jurors who are alternates, and

12   those are the jurors who are seats 7 and 11.  Before you two

13   leave -- and I'm sorry that you have to leave, but I'm going to

14   ask you to tear out a page from your notebook and write down

15   your name and daytime phone number and give it to the clerk.

16       I do this because it is possible, although unlikely, that

17   we will need to summon you back to rejoin the jury in case

18   something happens to a regular juror.  Since that possibility

19   exists, I am also going to instruct you not to discuss the case

20   with anyone until we call you.

21       My earlier instruction on use of the internet still applies.

22   Do not research the case or communicate about it on the

23   internet.  In all likelihood, we will be calling you to tell you

24   that there has been a verdict and you are now free to discuss

25   the case.  There is, however, that small chance that we will

1    need to bring you back onto the jury.

2      Thank you both very much for your service, and please report

3    back to the jury lounge to turn in your badge on your way out,

4    and Ms. Kay will help you now to leave the courtroom.

5      Lastly, I want to mention one or two matters to the rest of

6    the jury before you begin your deliberations.  These concern how

7    your verdict will be delivered.  When you have reached your

8    verdict, just send me a note telling me that you have reached a

9    verdict and have your foreperson sign the note.

10     Don't tell me what your verdict is, and don't send your

11   verdict forms out.  I will find out your verdict by asking your

12   foreperson to provide the verdict forms and state the verdicts

13   in open court after you have finished your deliberations and

14   returned to court.

15     Goodbye to both of you, and thank you again.

16       ALTERNATE JUROR:  Thank you.

17     (Alternate jurors exit.)

18       THE COURT:  Don't be surprised when the verdict is

19   returned that the parties ask that the jury be polled.  The

20   reason for polling the jury is that each party has a right to

21   make sure that your verdict is unanimous.

22     Polling means that after the foreperson states your

23   verdict, I will ask each you individually whether you agree

24   with that announced by your foreperson or by me in the

25   courtroom.  Your job is easy.  If you agree with the verdict,

1    you should simply say "yes" when I call the number of your

2    jury seat.  If you disagree in any way, you should simply say

3    "no."  Do not say anything other than "yes" or "no" in

4    response to a poll of the jury, and do not say anything during

5    the poll unless and until your seat number is called.

6         Ladies and gentlemen, today you may retire to begin your

7    deliberations, and lunch will be provided for you today.

8    We will send a copy of the jury instructions and the verdict

9    forms back to you shortly, and as well we will provide all the

10   exhibits that are in evidence in the case for you to review as

11   you see fit.  Ms. Kay will organize that and get that to you

12   shortly.  With that, I'm sort of delaying now, waiting for

13   Ms. Kay to get back so she can escort you out.  But I will

14   assist in that process.  So please...

15        (Jury out at 11:04 a.m.)

16        THE COURT:  All right.  So the case is with the jury.

17   We'll get a copy of the instructions.  Do you have a copy of

18   the instructions, Kym -- here it is.  It's right here.  We'll

19   get those to the jury, and the exhibits need to get back to

20   the jury as well.  So any questions?

21        MR. ROOTS:  Your Honor, with regard to the Rule 29

22   motion, when can we get a ruling on that?

23        THE COURT:  Let's finish with everything logistically

24   to get to the jury, and then we'll deal with that.  So

25   anything further on the logistics of getting exhibits, etc.,

1    to the jury?

2          MR. VALENTINI:  Just one question.  Does the Court

3    contemplate sending an exhibit list to the jury as well or

4    just the exhibits?

5          THE COURT:  I was just going to send the exhibits.

6    We don't have a clean exhibit list, I don't think, that has

7    marked what the exhibits in evidence are that doesn't have

8    every other exhibit that didn't get into evidence listed on it,

9    and I don't want to give them that.  If there are clean lists

10    with just the exhibits that are going to the jury — in other

11    words, just the exhibits that are in evidence — I don't have

12    any opposition to that going to the jury.  But you have to

13    coordinate with the two sides to make sure you have a complete

14    list of all exhibits.

15          MR. VALENTINI:  We do have such a list thanks to

16    Ms. Roberts, and we will coordinate.

17          THE COURT:  Okay.  So talk to Mr. Pierce and Mr. Roots,

18    and if you all agree, then we can send that list back to the

19    jury to make it easier for them to handle the exhibits and

20    find what they need.

21          MR. ROOTS:  I think we could print out a little list

22    and get it --

23          THE COURT:  And maybe they've done it -- that's just

24    the government list.  Okay.  Yeah, if you could, too, that

25    would be very easy.  And if you need any assistance in terms

1    of printing, we'll be glad to help you out with that.

2        Okay.  Mr. Roots.

3        MR. ROOTS:  Yeah.  We would just renew our motion for

4    acquittal.  Some of these things, just as a matter of law,

5    have not been proven, and no reasonable jury could find guilt

6    on some of these things.  In fact, I submit that all four of

7    these counts, really, no reasonable jury can find guilt on any

8    of the four.

9        THE COURT:  All right.  As I indicated previously, I

10   will again do the same thing, and that is reserve a decision,

11   allow the matter to be submitted to the jury, and I will

12   decide the motion after the jury returns a verdict.  If they

13   return a verdict of not guilty on any charges with respect to

14   any defendant, then I need not address those, but I will

15   certainly address the Rule 29 motion following the return of

16   any verdict of guilty with respect to any defendant on any

17   count.

18       And I will decide the motion based on, in the first

19   instance, based on the evidence at the time I first reserved

20   the ruling, and that is after the close of the government's

21   case, and then I will carry forward to decide as well based on

22   all the evidence.  The real difference would be that, after

23   all the evidence, the jury is able to make credibility

24   determinations with respect to some of the witnesses who

25   testified in the defense case.  But that is not something that

1      would be pertinent to deciding the Rule 29 motion made at the

2      close of the government's case.  But we will do that once the

3      jury returns a verdict.  So, with that, anything else?

4              MR. VALENTINI:  No, Your Honor.

5              MR. ROOTS:  Just one matter which I noticed, which is

6      the addresses of a couple of these guys' homes is on this, and

7      I'm hoping that this would not become a public record that

8      would be on a docket somewhere that someone could...

9              THE COURT:  That list -- is the address of any of the

10     defendants on the initial --

11             MR. ROOTS:  It says physical evidence, for example.

12             THE COURT:  Oh, the physical evidence portion.  It does

13     list the addresses.  We shouldn't have those addresses go onto

14     the public record.  There's no need for that, and indeed I

15     think there's a need to have that not occur.  Can you modify

16     the list to exclude those addresses as they appear on Exhibits

17     601 through 605, please?  All right.  That's a good catch,

18     Mr. Roots.  Thank you for that.

19         Anything else?  All right.  It's a little after eleven

20     o'clock.  I don't require that you remain in the courthouse,

21     but you need to be close by so you can get here when called

22     within just a few minutes.  Not 40 minutes, but just a few

23     minutes.

24         If the jury is still deliberating at the end of the

25     day, then I will discharge them by bringing them into the

1    courtroom, and so you'll have to be there for that at the end

2    of the day.  But we'll call you in advance and tell you you

3    need to come to the courtroom.  You can certainly feel free to

4    use the courtroom.  It will be available for you.  Just make

5    sure that you've given Ms. Kay your numbers so that she can

6    reach you when you're not in the courtroom.

7        Any other questions?

8            MR. VALENTINI:  No, Your Honor.  Thank you.

9            MR. ROOTS:  No, Your Honor.  Thank you.

10           THE COURT:  All right.  Thank you all, and we will

11   see you shortly.  And for any note that is substantive, I will

12   be contacting you to begin with and bring you here in all

13   likelihood.  There are some notes that are not substantive,

14   like we need pencils, and I will just take care of those; and

15   there are some notes that, while substantive, can easily be

16   handled in a conversation with you on the phone, and I will do

17   that if it's possible.  But in most instances of a substantive

18   note, I'll be bringing you into the courtroom to discuss it

19   before we respond to it.  Thank you all.

20       (Recess from 11:13 a.m. to 2:14 p.m.)

21           THE COURT:  All right.  We have a note from the jury,

22   and the note says, "We have a unanimous verdict."  So we will

23   bring the jury in.

24       (Jury in at 2:20 p.m.)

25           THE COURT:  All right.  Welcome, members of the jury.

1    Sorry the slight delay.  Over the lunchtime it's more

2    difficult to get people together, and some of that

3    responsibility is mine because I was actually out of the

4    building.  We have a note from you, and the note indicates,

5    "We have a unanimous verdict."  So let me ask first, who will

6    speak as your foreperson?

7        (Foreperson stands.)

8      All right.  The only question I have for you is whether the

9    jury has unanimously agreed on the verdict.

10        FOREPERSON:  Yes, Your Honor.

11        THE COURT:  And would you please hand the verdict form

12    to Ms. Kay so it can be delivered to me so I can review it.

13    Then you can have a seat.

14        (Foreperson complies.  Court reviewing verdict.)

15        THE COURT:  All right.  I find that the verdict forms

16    have been properly completed, so I'm now going to publish the

17    verdict.  That means, basically, that I'm going to read it,

18    and this will take a minute because there are three separate

19    verdict forms.

20      I would ask the jury to pay close attention as I read it

21    in case you are -- or I am asked to poll the jury, as I

22    indicated to you in the instructions earlier that that may

23    happen.  And if I am requested to poll the jury, then you will

24    be asked individually whether the verdict as published -- in

25    other words, as I read it -- is your individual verdict, is

it the same as your individual verdict in all respects.  So
please pay attention.  With that, I'm going to go through one
by one with respect to each defendant.

Count 1.  With respect to the offense of entering or
remaining in a restricted building or grounds in violation
of 18 U.S.C. § 1752(a)(1), we find Defendant James Varnell
Cusick, Jr., guilty.

Count 2.  With respect to the offense of disorderly and
disruptive conduct in a restricted building or grounds in
violation of 18 U.S.C. § 1752(a)(2), we find Defendant James
Varnell Cusick, Jr., guilty.

Count 3.  With respect to the offense of disorderly and
disruptive conduct in a Capitol building in violation of
40 U.S.C. § 5104(e)(2)(D), we find Defendant James Varnell
Cusick, Jr., guilty.

Count 4.  With respect to the offense of parading,
demonstrating, or picketing in a Capitol building in
violation of 40 U.S.C. § 5104(e)(2)(G), we find Defendant
James Varnell Cusick, Jr., guilty.

THE COURT:  Moving on to defendant Casey Cusick.

Count 1.  With respect to entering and remaining in a
restricted building or grounds in violation of Title 18 of the
U.S. Code § 1752(a)(1), we find Defendant Casey Cusick guilty.

Count 2.  With respect to the offense of disorderly and
disruptive conduct in a restricted building or grounds in

1    violation of Title 18 of the U.S. Code § 1752(a)(2), we find

2    Defendant Casey Cusick guilty.

3    Count 3.  With respect to the offense of disorderly and

4    disruptive conduct in a Capitol building in violation of 40

5    U.S.C. § 5104(e)(2)(D), we find Defendant Casey Cusick guilty.

6    Count 4.  With respect to the offense of parading,

7    demonstrating, or picketing in a Capitol building in violation

8    of 40 U.S.C. § 5104(e)(2)(G), we find Defendant Casey Cusick

9    guilty.

10    With respect to David John Lesperance.

11    Count 1.  With respect to the offense of entering and

12    remaining in a restricted building or grounds in violation

13    of 18 U.S.C. § 1752(a)(1), we find Defendant David John

14    Lesperance guilty.

15    Count 2.  With respect to the offense of disorderly and

16    disruptive conduct in a restricted building or grounds in

17    violation of Title 18 of the U.S. Code § 1752(a)(2), we find

18    Defendant David John Lesperance guilty.

19    Count 3.  With respect to the offense of disorderly and

20    disruptive conduct in a Capitol building in violation of Title

21    40 U.S.C. § 5104(e)(2)(D), we find Defendant David John

22    Lesperance guilty.

23    Count 4.  With respect to the offense of parading,

24    demonstrating, or picketing in a Capitol building in violation

25    of 40 U.S.C. § 5104(e)(2)(G), we find Defendant David John

1       Lesperance guilty.

2           Those are the verdicts of the jury on each of the

3       defendants with respect to each of the counts.  Any request

4       for polling?

5               MR. PIERCE:  Yes, Your Honor.

6               THE COURT:  So I'm going to poll the jury.  I'm going

7       to ask a single question and go to each jury member by seat

8       number.  So it'll be 1 through 6, then 8 through 10, and 12

9       through 14.  And I'll ask the question once and then ask each

10      member of the jury if your individual verdict is in complete

11      agreement with the verdict as I have just published it.

12          So is your verdict, individually, the same as the verdict

13      that I have just published by the jury?

14          Seat No. 1.

15              JUROR NO. 1:  Yes, Your Honor.

16              THE COURT:  Seat No. 2.

17              JUROR NO. 2:  Yes, Your Honor.

18              THE COURT:  Juror 3.

19              JUROR NO. 3:  Yes, Your Honor.

20              THE COURT:  Juror 4.

21              JUROR NO. 4:  Yes, Your Honor.

22              THE COURT:  Juror 5.

23              JUROR NO. 5:  Yes, Your Honor.

24              THE COURT:  Juror 6.

25              JUROR NO. 6:  Yes, Your Honor.

```
 1              THE COURT:  Juror 8.

 2              JUROR NO. 8:  Yes, Your Honor.

 3              THE COURT:  Juror 9.

 4              JUROR NO. 9:  Yes, Your Honor.

 5              THE COURT:  Juror 10.

 6              JUROR NO. 10:  Yes, Your Honor.

 7              THE COURT:  Juror 12.

 8              JUROR NO. 12:  Yes, Your Honor.

 9              THE COURT:  Juror 13.

10              JUROR NO. 13:  Yes, Your Honor.

11              THE COURT:  And Juror 14.

12              JUROR NO. 14:  Yes, Your Honor.

13              THE COURT:  All right.  The jury has been polled and

14        the verdict is unanimous, and that unanimity means that we

15        will file and record the verdict as the jury has provided it

16        on the verdict forms.  That completes the jury's role in this

17        proceeding, and we thank you very much for your attention,

18        your care, and your deliberations on the evidence that was

19        presented during the course of the trial.

20           Is there anything further before we dismiss the jury?

21              MR. VALENTINI:  Not from the government.

22              THE COURT:  From the defense?

23              MR. PIERCE:  No, Your Honor.

24              THE COURT:  Ladies and gentlemen, thank you again very,

25        very much.
```

1    They need to return to the jury office to return their

2    badges; is that correct?

3        THE DEPUTY CLERK:  No.  They're going to put their

4    badges in their folders, in the Redwells, and leave them in

5    their seats.

6        THE COURT:  All right.  Put your badges in your

7    Redwells and leave them in your seats.  I'm very good at

8    telling you what Kym tells me.  And I thank you again, and

9    we appreciate your service to the justice system and to the

10   community.

11       (Jury out at 2:28 p.m.)

12       THE COURT:  All right.  Now we have the Rule 29 motion

13   to deal with.  I'm going to take a five-minute break, and I'll

14   be back and we'll address that.  If there's any further

15   argument that anyone wants to make, I will certainly hear

16   that, but I'm prepared to rule on the motion based on the

17   arguments already made.  Mr. Pierce?

18       MR. PIERCE:  Yes, Your Honor.  I have a status hearing

19   in front of Judge Contreras, if it's okay for Mr. Roots to

20   handle the rest of Rule 29?

21       THE COURT:  That's okay.  It only requires one of you

22   to be here, just so the defendants are represented.

23       MR. PIERCE:  Okay.  Thank you, Your Honor.  I'll be

24   right back as soon as it's over.

25       THE COURT:  So I will see you in five minutes.

1      (Recess from 2:29 p.m. to 2:40 p.m.)

2          THE COURT:  Okay.  So I'm going to rule on the Rule 29

3      motion, but if anyone has something to say before I do so, I'm

4      ready to hear first from the defense, if you have anything you

5      want to say in addition to what's already been argued, and

6      then if the government has anything in response.

7          MR. ROOTS:  Thank you, Your Honor.  We rely on what

8      we're already argued.  No jury could convict on any of the

9      four counts.  Let's just throw out the suggestion that maybe

10     the piercing noise or something like that was sufficient for

11     a jury to come to a verdict on Count 1, the entering and

12     remaining in a restricted area count or something like that.

13     The pepper spray smell.  I mean, there were some snippets of

14     evidence.  I don't regard it as nearly sufficient.

15         But suppose there was enough to go to the jury on Count 1.

16     Then we get to the count -- there are major problems with the

17     other three counts.  The disorderly and disruptive conduct

18     charge, Count 2.  I don't know of a single case in American

19     history of disorderly conduct that involved merely standing or

20     walking in a place.

21         If there's a single case published in all of the annals of

22     federal case law, or state case law for that matter, I want to

23     see that case published, because these men did not commit

24     disruptive and disorderly conduct.  There's no way this can

25     stand.  If that's the law, then it changes American law and

1    then every American who is loitering at a 7-Eleven can be

2    convicted of disorderly conduct or -- this would be a

3    fundamental change in American law if this were allowed to

4    stand.

5        Then we get to this picketing, parading, and/or

6    demonstrating.  And, again, the facts were -- the factual

7    evidence just does not support that.  This, if it were able

8    to stand, would establish an outrageous precedent.  These

9    gentlemen did not picket.  They did not parade by any

10   dictionary definition, just the dictionary definition, or

11   demonstrate.  They didn't even raise their voices.  They

12   didn't chant.  There is just insufficient support under the

13   law -- not just the facts, but under the law for -- and the

14   government did not provide any evidence of intent, any intent

15   to disrupt or be disruptive or disorderly.

16       And by the way, unlike some January -- well, many January 6

17   cases, in this case there isn't even a snippet of evidence

18   that they had any idea about disrupting the congressional

19   vote-counting stuff.  Most January 6's have at least something

20   like a Facebook post, hey, let's stop the steal, or something.

21   In this case there isn't even a Facebook post that says Stop

22   the Steal.  Nothing.

23       So the intent to disrupt or be disorderly is absolutely

24   absent, and if the charges were able to stand, this would

25   establish just a horrible precedent.  And I submit it can't

1   stand.  This would change fundamental principles of federal

2   law.

3        THE COURT:  All right.  Thank you, Mr. Roots.

4   Anything from the government?

5        MR. VALENTINI:  Yes, Your Honor.  I'll be very brief.

6   The instructions that were given to the jury were correct and

7   the evidence in this case supports the verdicts on all of

8   those issues that have been raised with respect to disorderly

9   conduct and interfering with another person by unnecessarily

10  crowding that person meets the federal definition that Your

11  Honor gave to the jury that definition is correct.

12       The evidence in this case was that in fact defendants

13  participated in a riot that crowded the Capitol at a time when

14  it was supposed to be certifying the results of the 2020

15  election similar with respect to the disruptive conduct any

16  disturbance that interrupts an event activity or the normal

17  course of a process and the evidence in this case supports the

18  jury's verdict on that count as well.

19       I do want to touch on intent.  There was ample evidence of

20  intent.  First as Your Honor correctly instructed the jury the

21  jury could rely even exclusively on circumstantial evidence,

22  and that alone could have supported the verdict.  But in this

23  case the defendants decided to take the stand and with respect

24  to the certification of the Electoral College at least two of

25  them -- well in fact all of them recognized and admitted that

1    they were aware that this is what Congress was supposed to do

2    on January 6.  And when they decided to go to Congress into

3    the Capitol to demonstrate exactly on that one day every four

4    years when Congress is supposed to certify the results of the

5    election and only on that day and no other day establishes the

6    intent to in fact impede Congress's carrying out of those

7    functions.  I believe we're ready to leave it at that unless

8    the Court has any specific questions about the issues raise.

9         THE COURT:  All right.  Thank you.

10    Mr. Roots, anything further in response?

11         MR. ROOTS:  Well, just being aware, the claim that

12    because the defendants were aware that there was a

13    certification proceeding going on that particular day, I mean

14    the Capitol is the place where legislation and these kinds of

15    certifications happen.

16    This is just -- it's part of politics.  This would set a

17    horrible precedent with regard to political expression, the

18    idea that, hey, if you choose the wrong day, if you happen

19    to go to the U.S. Capitol on the wrong day, you can be

20    convicted of crimes.  If you stand in the wrong place, walk

21    down the wrong hall, it just does not establish disorderly

22    conduct with any intent to disrupt anything.

23    And by the way, most politics is about disrupting or

24    changing or trying to reform something.  Imagine if you

25    could be convicted of disorderly conduct by sending a letter,

1    standing in a place saying hello to a congressman or not hello

2    or maybe even refusing to shake a congressman's hand.  This

3    cannot be disorderly conduct with intent to, you know, alter

4    a proceeding or something.

5              THE COURT:  All right.  Thank you, Mr. Roots.

6         So at the close of the government's case, the defendants

7    moved for a judgment of acquittal under Federal Rule of

8    Criminal Procedure 29(a) as to each count charged against each

9    defendant.  I reserved decision on that motion and submitted

10   the case to the jury and reserved decision at the close of the

11   government's case and then at the close of all the evidence.

12   And the jury has now returned a verdict of guilty on all

13   counts as to each of the three defendants, and the Court will

14   now address and deny the defendants' pending Rule 29 motion.

15        I conclude that the government presented sufficient

16   evidence such that a rational fact-finder could find beyond

17   a reasonable doubt that all elements of each of the charges

18   against each of the defendants have been proven.

19        The legal standard for Rule 29(a) motion is straightforward.

20   Rule 29(a) of the Federal Rules of Criminal Procedure provides

21   that, and I quote, "After the government closes its evidence,

22   or after the close of all the evidence, the Court, on the

23   defendant's motion, must enter a judgment of acquittal of any

24   offense for which the evidence is insufficient to sustain a

25   conviction."

1        When ruling on a motion for judgment of acquittal, the

2   Court must, again, I quote, "consider the evidence in the

3   light most favorable to the government and determine whether,

4   so read, it is sufficient to permit a rational trier of fact

5   to find all of the essential elements beyond a reasonable

6   doubt."  The citation for that quote is *United States v.*

7   *Kayode*, 254 F.3d 204, 12 (D.C. Cir. 2001).

8        The Court must "accord the government the benefit of all

9   legitimate inferences" and deny the motion if "any rational

10  trier of fact could have found the essential elements of the

11  crime beyond a reasonable doubt."  *United States v. Jabr,*

12  Criminal Action No. 18-0105, 2019 WL 13110682 at *3.  That's a

13  DDC case, May 16, 2019.

14       So in this case there's video evidence capturing each of

15  these defendants for nearly their full duration inside the

16  Capitol building.  Accordingly, the main dispute is about the

17  significance of the actions that the jury can see on video,

18  whether the defendants acted with the requisite intent and

19  whether the conduct we've viewed multiple times over the past

20  few days amounts to a violation of the four statutes that each

21  of the defendants is charged with violating.  I'll deal with

22  them one by one.

23       Count 1.  Entering and remaining in a restricted building

24  or grounds.  Count 1 of the information charges each defendant

25  with entering or remaining in a restricted building or grounds.

Count 1 requires the government to prove beyond a reasonable doubt that (1) defendants entered or remained in a restricted building or grounds without lawful authority to do so; (2) defendants did so knowingly, meaning they knew that the building or grounds was restricted, and they knew they lacked lawful authority to enter or remain there.

I conclude that a rational trier of fact can find both elements of the crime beyond a reasonable doubt.

First, the term "restricted building or grounds" means any posted, cordoned-off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is temporarily visiting.

The government produced evidence that the vice president, a Secret Service protectee, was visiting the Capitol on January 6, 2021.  It also presented plentiful evidence of restrictions including police activity, the presence of many police officers, some of them in riot gear, signage, bike racks, snow fencing, other barricades and alarms that went off, and introduced witness testimony that the Capitol building was restricted to authorized persons that day.

And there's no dispute that each defendant entered the U.S. Capitol and remained inside for several minutes.  Accordingly, I conclude that there is sufficient evidence to permit a rational trier of fact to find that the defendants entered and remained in a restricted building without lawful authority to

1    do so.

2        Second.  There's sufficient evidence in the record to

3    permit a reasonable jury to conclude that defendants acted

4    knowingly.  A person acts knowingly if he realizes what he is

5    doing and is aware of the nature of his conduct and does not

6    act through ignorance, mistake, or accident.  Let me briefly

7    recount some of the relevant evidence.

8        Video taken by Mr. Lesperance shows that defendants passed

9    by — they even walked over — fallen fencing as they approached

10   the Capitol.  At one point Mr. Lesperance filmed signage

11   attached to a bike rack on the walkway that read "Area Closed."

12       Defendants observed rioters scaling and falling from

13   walls of the West Terrace.  The defendants viewed broken

14   windows on the Senate Wing doors, or next to the Senate Wing

15   doors, and heard alarms blaring upon entering through the

16   Senate Wing doors.

17       The defendants walked past numerous police lines both

18   outside and within the Capitol building.  Video evidence

19   indicates that defendants encountered one such line of

20   officers immediately upon entering the building, and it

21   appears to show -- and I stress *appears*.  It appears to

22   show Casey Cusick guide defendants away from those officers.

23   While inside, one defendant commented loudly, and in very

24   close proximity to the other defendants, that he smelled

25   pepper spray within the building.

1    Presented with all this evidence, a rational jury could

2    certainly conclude that each defendant knew the area was

3    restricted and knew he was not permitted to be there, and this

4    court's task is not to decide what the better view of the

5    evidence is.  That's not my role.  Rather, my responsibility

6    is to decide whether the evidence is sufficient to sustain a

7    conviction by a rational jury.  Accordingly, I conclude that

8    the government presented sufficient evidence for a rational

9    juror, a rational trier of fact, to find each defendant guilty

10   on Count 1.

11       Now, this conclusion is not changed by any of the evidence

12   offered by the defense.  Defendants testified that they either

13   did not see all of these events, or discounted them if they

14   did observe them.

15       However, considering the evidence in the light most

16   favorable to the government, a rational trier of fact could

17   disbelieve defendants' testimony and instead rely on the

18   government's evidence, which was sufficient for a jury to

19   find that defendants knew the area was restricted.

20       *See United States v. Campbell*, 702 F.2d 262, 264 (D.C.

21   Cir. 1983), explaining that a court must presume that the

22   jury has properly carried out its functions of evaluating

23   the credibility of witnesses, finding the facts, and drawing

24   justifiable inferences.

25       This is especially true given the inconsistent nature of

some portions of defendants' testimony.  The fact that a
jury could have chosen to discredit any or all of defendants'
conflicting testimony applies to the Court's analysis of each
of the four counts.

Moving on to Count 2.  Count 2 of the information charges
each defendant with disorderly or disruptive conduct in a
restricted building.  Count 2 requires the government to prove
beyond a reasonable doubt that (1) defendants engaged in
disorderly or disrupt conduct in, or in proximity to, any
restricted building or grounds; (2) defendants did so
knowingly and with the intent to impede or disrupt the orderly
conduct of government business or official functions; and
(3) defendants' conduct occurred when, or so that, their
conduct in fact impeded or disrupted the orderly conduct of
government business or official functions.

As to the first element, the Court has already demonstrated
that a reasonable jury could find that defendants were in a
restricted building.  Disorderly conduct occurs when a person
is unreasonably loud and disruptive under the circumstances or
interferes with another person by jostling against or
unnecessarily crowding that person.  Disruptive conduct is a
disturbance that interrupts an event, activity, or the normal
course of a process.

Defendants argued that no rational jury could find that
they engaged in disorderly or disruptive conduct because they

1    simply walked or milled about inside the Capitol building.
2    And, indeed, counsel has said that would be an unprecedented
3    finding in the history of American jurisprudence.

4        The Court will not overstate the evidence against the
5    defendants.  Frankly, they didn't do much of note inside the
6    Capitol building.  They entered through the Senate Wing doors,
7    they wandered about, passing through the Crypt and by the
8    House Wing doors, occasionally filming the mob of people
9    inside before turning back, lingering in the Crypt, and
10   finally exiting.  In all, they remained in the Capitol about
11   10 minutes, before spending another hour on the terrace
12   outside of the Senate Wing doors.

13       As far as January 6 cases goes, these defendants were
14   largely peaceful participants.  But the evidence does not show
15   defendants merely walking around the building in isolation.
16   Rather, they entered the Capitol alongside hundreds of others,
17   witnessed the presence of riot police, heard alarms, saw
18   broken windows, and nevertheless joined the crowd in the
19   Capitol.  A rational jury could conclude that they were in
20   fact a part of that mob.

21       As this court and others have repeatedly explained, and I
22   quote, "Even mere presence in an unlawful mob or riot is both
23   (1) disorderly in the sense that it furthers the mob's
24   disturbing the public peace, and (2) disruptive insofar as
25   it disturbs the normal and peaceful condition of the Capitol

grounds and buildings, its official proceedings, and the safety of its lawful occupants." And that citation, among many other cases, is *United States v. Rivera*, Criminal Action No. 21-0060, 2022 WL 2187851 at *5, June 17, 2022, a DDC case.

This conclusion that presence in a mob often rises to the level of being disorderly or disruptive makes sense given the nature of a mob. A mob, like the one on January 6, is made up of individual members, and each individual member increases its power and disruptive force.

As one judge in this district has explained in another January 6 case, and I quote, "Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field." *Rivera*, 2022 WL 2187851 at *5.

Thus, the actions that would neither be disorderly or disruptive in isolation may become disorderly or disruptive in the context of the events that occur like those of January 6, 2021. Accordingly, there is sufficient evidence for a rational trier of fact to find that each defendant engaged in disorderly or disruptive conduct.

As to the second element, a jury could reasonably determine that defendants did so knowingly and with the intent to impede or disrupt the orderly conduct of government business or official functions.

As to knowingly, defendants could simply look around and

realize that they were part of a mob.  A jury could conclude
that defendants knew that Congress was certifying the election
that day, a proceeding which would not be open to the public,
and that they were not allowed inside.

Further, and I quote, "The law permits the fact-finder
to infer that a person intends the natural and probable
consequences of their actions." *United States v. Mejia*, 597
F.3d 1329, 1341, (D.C. Cir. 2010).

Accordingly, a jury could reasonably infer that each
defendant intended to impede or disrupt the orderly conduct
of government business or official functions when they entered
the Capitol alongside or among a large mob while Congress was
meeting to certify the election.

Finally, a jury could conclude that defendants' conduct in
fact impeded or disrupted the orderly conduct of government
business or official functions.  Witnesses for the government
testified that the Capitol Police were overwhelmed by the size
of the mob and that the joint session of Congress could not
resume until all unauthorized people, including these defendants,
were removed from the Capitol.

Courts in January 6 prosecutions have repeatedly noted
this fact.  Citation *Rivera*, 607 F.Supp 3d at 9, noting that
proceedings could not recommence until the entire building was
secured and cleared of rioters, and even the presence of one
unauthorized person in the Capitol was reason to suspend

congressional proceedings.

The fact that defendants may have arrived after the proceedings were initially halted does not change the Court's analysis because the proceedings were continually impeded until all of the rioters had finally cleared the building. *See United States v. Brock*, 628 F.Supp 3d 85, 92 (DDC 2022). "(There is no requirement that the government alleged actions taken before the joint session was suspended.)"

While it's possible that some juries could reach the opposite conclusion that these defendants were not acting as part of a mob, I conclude that there is sufficient evidence to allow a rational jury to find each defendant guilty on Count 2, disorderly or disruptive conduct in a restricted building, beyond a reasonable doubt.

Count 3 of the information charges each defendant with disorderly and disruptive conduct in a Capitol building. To find defendants guilty of this offense, the government must prove beyond a reasonable doubt that (1) defendants engaged in disorderly or disruptive conduct in any United States Capitol building; (2) they did so with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either house of Congress; (3) they acted willfully and knowingly.

The Court has already explained that a reasonable jury could determine that each defendant engaged in disorderly or disruptive conduct in the U.S. Capitol and that they did so

knowingly and with the intent to impede, disrupt, or disturb the
orderly conduct of a session of Congress.  All that remains,
then, is whether they did so willfully.

A person acts willfully if he acts with the intent to do
something that the law forbids, that is, to disobey or disregard
the law.  In light of all the evidence discussed that could have
put defendants on notice that they were not lawfully present in
the Capitol, I conclude as well that a rational trier of fact
could find that defendants acted willfully.  Accordingly, there
is sufficient evidence for a jury to find each defendant guilty
of Count 3, disorderly or disruptive conduct in a Capitol
building, again, beyond a reasonable doubt.

So, finally, Count 4, which charges each defendant with
parading, demonstrating, or picketing in a Capitol building.
To find defendants guilty of this offense, the government must
prove each of the following elements beyond a reasonable doubt:
(1) that defendants paraded, demonstrated, or picketed in any
United States Capitol building; (2) that defendants acted
willfully and knowingly.

The Court concludes that there is sufficient evidence for a
jury to find, at a minimum, that defendants demonstrated in the
Capitol.  The term "demonstrate" includes conduct that would
disrupt the orderly business of Congress.  As the Court has
already explained, a jury could reasonably find that defendants
demonstrated when they knowingly and willfully joined a mob of

1    rioters inside the Capitol, which disrupted the orderly business
2    of the joint session of Congress.
3        For the purposes of this motion, the Court need not address
4    whether a rational jury could also conclude that the defendants
5    paraded or picketed.  Thus, the government has offered
6    sufficient evidence for a jury to find each defendant guilty
7    on Count 4, parading, demonstrating, or picketing in a Capitol
8    building, beyond a reasonable doubt.
9        No evidence offered by the defense would change this
10   conclusion.  In fact, some of defendants' testimony further
11   supports a rational jury's finding of guilt, as each defendant
12   testified that he came to Washington, D.C., to protest the
13   certification of an election that he believed to be stolen and
14   that each defendant knew the certification was occurring that
15   afternoon.  A reasonable jury could infer that the defendants
16   went to and in the Capitol in order to demonstrate their
17   conviction in this regard.
18       For all of these reasons, I will deny Defendants' Rule 29
19   motion, both as made at the close of the government's case and
20   as renewed at the end of trial.  With that, anything further
21   that we need to discuss or address here this afternoon,
22   Mr. Valentini and Ms. Murphy?
23           MR. VALENTINI:  No, Your Honor.  Thank you.
24           THE COURT:  Mr. Roots and Mr. Pierce.
25           MR. PIERCE:  No, Your Honor.

1          THE COURT:  All right.  Thank you all.  We need to set

2     a sentencing date.  Normally, sentencing in this court these

3     days takes place in about 90 days, on average.  And we have

4     three defendants, so I want to give the probation office

5     sufficient time to do their job.  And especially over the

6     summer months, I think that's necessary.

7          MR. PIERCE:  Your Honor, I'm so sorry to interrupt.

8     Judge Contreras is wanting me to jump on.  They moved it to --

9          THE COURT:  I'm sorry.  Judge Contreras is what?

10          MR. PIERCE:  I'm sorry, Your Honor.  They had moved the

11     status hearing to three o'clock, and I emailed them to try to

12     get more time.  I guess they're waiting.  Is it okay if I --

13          THE COURT:  Unless you're necessary in order to set the

14     sentencing date.

15          MR. PIERCE:  I'm not, Your Honor.

16          THE COURT:  All right.

17          MR. PIERCE:  Mr. Roots can do that--

18          THE COURT:  Okay.  Don't contact me later and say,

19     whoops, I'm not available on that date.

20          MR. PIERCE:  No.  I understand, Your Honor.

21          THE COURT:  All right.

22          MR. PIERCE:  Thank you.

23        (Counsel exits.)

24          THE COURT:  So normally that would take us to

25     mid-October, so let's look for a date in mid-October.  I don't

1    have my calendar in front of me, so I need to rely on Mr. Van

2    Leer and Ms. Kay with respect to a date for a sentencing in

3    mid-October.

4            THE DEPUTY CLERK:  Wednesday, October 18, is clear.

5            THE COURT:  Okay.  We have other matters that week, but

6    not on Wednesday?

7        (Court conferring with law clerk.)

8        I'm fearful that I will be out of town, because those are

9    out-of-town meetings.  How does the prior week look, like

10    maybe on Thursday of that week?  That will be October what?

11            THE DEPUTY CLERK:  October 12.

12            THE COURT:  How's October 12?  Thursday, October 12.

13    For the government?

14            MR. VALENTINI:  Yes, Your Honor.  That's fine.

15            THE COURT:  And Mr. Roots for the defense.

16            MR. ROOTS:  That's actually my birthday, Your Honor.

17    I think we're -- we are clear that day.

18            THE COURT:  It's only one day away from my birthday,

19    so congratulations to both of us.

20            MR. ROOTS:  Both Libras.

21            THE COURT:  So since it'll take awhile with three

22    defendants, let's do it at ten o'clock so we can do it in the

23    morning.  10 a.m. on Thursday, October 12.  All right?  I'll

24    need sentencing memos in advance of that date.  I think if I

25    have them by that Monday, which is October 9 -- so let's have

1    the sentencing memos by that date.  With that, is there

2    anything else?  Mr. Roots?

3              MR. ROOTS:  Was that the 8th or the 9th?

4              THE DEPUTY CLERK:  The 9th is a Monday.  Of October.

5    The 9th of October.

6              THE COURT:  All right.  Anything else now that we've

7    scheduled that?

8              MR. VALENTINI:  No, Your Honor.  Thank you.

9              MR. ROOTS:  No, Your Honor.  Thank you.

10             THE COURT:  Thank you.  Each of the defendants has

11   been on release under certain conditions.  They have now been

12   convicted on misdemeanors.  Any request by the government to

13   change the release status pending sentencing?

14             MR. VALENTINI:  No, Your Honor.

15             THE COURT:  All right.  And I think that's appropriate,

16   to leave you on release under the same conditions that you've

17   been under.  You need to continue to comply with those

18   conditions as you have been doing.  I'll just give you the

19   same admonitions that I've given before, and that is that if

20   you were to violate those conditions, you could be subject to

21   serious consequences.

22        You now have a sentencing date on Thursday, October 12,

23   at 10 a.m., here in this courtroom.  You need to be here in

24   person for the sentencing.  A failure to appear could subject

25   you to serious consequences, independent consequences.  And

1 lastly, if you were to commit a crime while on release under

2 these conditions, you could be subject to more serious

3 penalties for that crime than you otherwise would face.

4   With those warnings in place, I wish everyone a good day,

5 including Mr. Pierce who's back in the courtroom.  And thank

6 you for your participation in this trial, which was

7 efficiently and well presented, and we will see you next on

8 October 12.  Good day.  Thank you.

9   (Proceedings adjourned at 3:12 p.m.)

*  *   *   *   *   *

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne